## FARMERS' MFG. CO. v. BURTON.

Circuit Court of Appeals, Fourth Circuit.
June 3, 1927.

No. 2606.

1. **Appeal and error** ☞1002—Appellate court, unless clearly and positively led to different conclusion, will not disturb jury's finding on conflicting evidence, affirmed by trial court, as to negligence causing injury.

Jury's findings of fact, on conflicting testimony, as to injury to employee being caused by his employer's, and not his, negligence, approved by trial court, will not be disturbed, unless appellate court be clearly and positively led to a different conclusion.

2. **Master and servant** ☞286(10)—Stave mill held not, as matter of law, properly operated, in view of enlargement of groove for cut-off saw.

Where groove for cut-off saw, in stave and barrel factory, had become so enlarged as to permit, not merely the sawdust to fall through, as contemplated, but also ends of logs and odds and ends to get through, thereby clogging and obstructing the saw, in removing which obstruction, while the saw was in operation, as was manifestly expected, the hand of the operator was thrown against the saw, *held*, that it could not be said as matter of law that the mill was operated in a safe and proper manner.

In Error to the District Court of the United States for the Eastern District of North Carolina, at Elizabeth City; Isaac M. Meekins, Judge.

Action by Felton Burton against the Farmers' Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

E. F. Aydlett, of Elizabeth City, N. C. (Aydlett & Simpson, of Elizabeth City, N. C., on the brief), for plaintiff in error.

J. C. B. Ehringhaus, of Elizabeth City, N. C. (Ehringhaus & Hall, of Elizabeth City, N. C., on the brief), for defendant in error.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

WADDILL, Circuit Judge. This action was instituted in the superior court of Currituck county, N. C., to recover damages for personal injuries sustained by the defendant in error, plaintiff in the court below, while in the employ of the plaintiff in error, defendant below, and by appropriate proceedings was removed into the United States District Court at Elizabeth City, where it was tried, and resulted in a verdict in favor of the plaintiff against the defendant. The parties will hereinafter be referred to by their titles in the lower court.

Plaintiff, at the time he sustained his injuries, on the 27th of June, 1923, as he had been for a long number of years prior thereto, was in the employ of the defendant, at its stave and barrel mill near Coinjack, Currituck county, engaged in the operation of a saw known as the cut-off saw, used to cut logs into certain lengths for manufacture in said mill. A description of the mill, the manner of its operation, and the way in which plaintiff received his injury is briefly given in the brief of the plaintiff in error, defendant below, as follows:

"The mill was so arranged that there were two levers; the one on his right being used to draw the logs along a trough up to and in front of the saw, and when the logs came into position the saw, which was a cut-off saw, was operated by a lever with the left hand. These logs were marked at the point to be cut, and, when they were drawn by the conveyor operated by the lever on the right to the proper place, they were stopped, and the lever on the left was used by the plaintiff to push the saw to the log and cut it off. That there was a groove through the bed or platform along which the log was drawn, for the saw to go through. That the groove was originally about 1½ inches, but had been widened to 6 or 7 inches, caused by the widening of the saw. That the plaintiff was on the floor when he operated the conveyor and the cut-off saw, and underneath this floor was a chain which ran in a trough about 10 inches wide at the bottom, about 15 inches deep, and 15 to 18 inches wide at the top. That this chain moved towards the saw for a distance, and below the bottom of it, and turned on a sprocket, and carried off the sawdust and trash that would fall through this groove. That this chain was operated as a conveyor of the sawdust and odds and ends falling through the groove, and was operated by a belt attached to the main shaft, which was some 12 or 14 feet from where the plaintiff's position was in the operation of the saw. That this belt was thrown by a piece of wood whenever it was desired to stop the conveyor of the sawdust. That frequently ends of logs would fall through the groove onto the conveyor and would clog the trough, and it would become necessary to clean it out. That the trough to be cleaned out was underneath the floor, and it was done by throwing the belt, which would stop the movement of the conveyor chain, and the pieces of wood could be removed, and there would be no danger of getting hurt. That it was his duty to keep the groove cleaned out. That he had been cleaning out the groove with his hand at times. That he had seen the manager of the mill do so; also the foreman. That he felt it was dangerous running his hand down in this groove, so he went to the blacksmith shop and had a rod of iron shaped at one end and a handle turned at the other end. That he used this to stick down in the groove to clean out the blocks and pieces that would fall through and clog the saw. That it was dangerous, when clogged, not to remove them. That the saw became clogged, and he got a piece of iron, and went nearly in front of the saw, and stuck it in the groove, which was directly over the chain, which was still running, cleaning out the sawdust and pieces that fell in along this wooden conveyor, and that the iron went through the links above and below the chain, and snatched his hand in front of the saw, cutting a portion of his hand off. That he had used the rod of iron for about three weeks before the injury, and in the presence of the superintendent of the mill, and that he had seen Mr. Kinsey, the superintendent, also use a rod of iron for freeing the conveyor."

This statement of the accident may be accepted, save that the defendant attributes the widening of the groove from 1½ to 6 or 7 inches, to the "widening" of the saw; whereas plaintiff's testimony is that it was caused by the "wobbling" of the saw. Doubtless defendant's statement means the same thing as "wobbling," as manifestly there was no "widening of the saw" as such. This, however, is not very material, as it was the existence of the enlarged groove from 1½ to 6 or 7 inches that afforded the opportunity for the accident.

Plaintiff insisted that the injury was caused by the negligence of the defendant in failing to furnish him a safe place in which to work, and reasonably safe and suitable appliances and instrumentalities with which to perform his duties; that he sustained his

injuries, while so engaged, solely as the result of the omission of the defendant to exercise reasonable and proper care to safeguard and protect him while at work; and that the accident occurred without fault on his part.

Defendant, on the other hand, insisted that the plaintiff was in all respects furnished with a safe and proper place in which to perform the duties required of him, and that he sustained his injury solely as the result of lack of due care and caution on his part, and but for which no accident would have happened.

Issue was joined upon the questions thus presented. Much testimony was taken by the parties, respectively, in which there was considerable conflict. The case was submitted to the jury under an appropriate charge and instructions, to which no exceptions were taken; the defendant having moved the court at the conclusion of the plaintiff's testimony, and again at the conclusion of all the evidence, to take the case from the jury and direct a verdict for the defendant, which the court overruled.

The issues presented to the jury, and the answers thereto were as follows:

"(1) Was plaintiff injured as alleged in complaint by negligence of defendant? Answer: Yes.

"(2) Did plaintiff contribute to his own injury by his negligence as alleged? Answer: No.

"(3) What damage, if any, is plaintiff entitled to recover? Answer: Twenty-five hundred dollars, without interest."

Upon the verdict thus rendered, the court entered judgment in conformity with the finding of the jury, over the objection of the defendant, and from which this writ of error was sued out.

The assignments of error present for the consideration of the court four questions: First. Whether the defendant timely, and by the proper method and manner, preserved its exceptions to the action of the court complained of. Second. Whether the court erred in submitting the case to the jury, and its refusal in lieu thereof to instruct a verdict in favor of the defendant. Third. Whether the court erred in its refusal to instruct a verdict for the defendant because of the contributory negligence of the plaintiff. Fourth. Whether the court erred in its failure to set aside the verdict, and in entering judgment thereon.

First. Plaintiff insists that defendant failed timely and properly to preserve its exceptions to the action of the trial court, in that it neither caused its bills of exception to be signed during the term at which the trial was had, or secured an extension of such period in which to do so. The trial was concluded on the 15th of October, 1926, and the bills of exception were finally settled and signed on the 23d of December, 1926, though filed in the clerk's office on the 16th of November, 1926. The term of the court at which the trial was had adjourned during October, 1926, and no order was entered for the enlargement of the time in which the bills of exception might be filed. Under rule 27 of the Rules of the District Court of the United States for the Eastern District of North Carolina, 20 days is prescribed in which bills of exception may be filed. This rule was not adhered to. Taking the view most favorable to the defendant, that exceptions during 20 days could be filed although the term had expired, without previous permission so to do, nevertheless in this case more than 30 days had elapsed before any exceptions were filed.

We are strongly inclined to the view that, under a decision of this court rendered on the 11th of January, 1927, in the case of Goetzinger et al. v. Woodley et al. (C. C. A.) 17 F.(2d) 83, in which this court felt it was bound by the decision of the Supreme Court of the United States in Exporters, etc., v. Butterworth-Judson Co., 258 U. S. 365, 42 S. Ct. 331, 66 L. Ed. 663, though contrary to previous decisions of this court, that the exceptions cannot be upheld. Other decisions bearing specially on the subject (the first three cases from this court) are cited as of peculiar interest. E. I. Du Pont de Nemours Co. v. Smith (C. C. A.) 249 F. 403; Oxford & Coast Line R. R. v. Union Bank (C. C. A.) 153 F. 723; Scaife v. Western N. C. Land Co. (C. C. A.) 87 F. 308, 310, 311; East Tenn. Iron & Coal Co. v. Wiggin (C. C. A.) 68 F. 446.

[1, 2] Second. We do not find it necessary, however, to pass upon the technical point raised as to the sufficiency of the bill of exceptions; for, assuming the same to have been properly signed, we are of opinion that there was no error in the action of the court below upon the merits. There was a sharp conflict in the testimony as to whose negligence brought about the accident—whether the defendant by its failure to properly discharge its obligation to the plaintiff, or the plaintiff by his failure to perform the services and the manner of the performance of the duties required of him; and upon these

two questions, pointedly and succinctly submitted to the jury, with proper instructions by the trial court, the jury returned the verdict complained of, and sought to be set aside.

The questions submitted were purely of fact, in which the jury had the advantage of seeing and hearing the witnesses on the respective sides give their several accounts of the transactions; and, having reached the conclusion that it was by the defendant's negligence, free from contributory negligence by the plaintiff, and which finding received the sanction of the trial judge, who also had the same advantages as the jurors in respect to seeing and hearing the witnesses, we would not feel warranted in substituting our judgment for that of the jury, thus approved by the trial court, unless we were clearly and positively led to a different conclusion from the facts, which we are not. On the contrary, we are convinced that the jury was entirely warranted in taking the view it did, as it doubtless would have been in accepting the defendant's view. A holding contrary to that taken by the jury would be for this court to decide that, at the time of the happening of the accident, the stave and barrel mill was operated in a safe and proper manner, notwithstanding the fact that the groove in which the saw operated had become so enlarged as to permit the ends of logs and odds and ends to fall through the same, thereby clogging and obstructing the saw, and preventing the safe operation of the same; it being a concessum that the groove contemplated the removal of sawdust only, and that it was dangerous to attempt to operate the machine after the saw had become clogged.

We are not persuaded that due care on the part of the defendant for the reasonable safety of the plaintiff, was measured by the dangers incident to that of a stationary, or dead, as distinguished from those of a running, machine. Manifestly the plaintiff was expected to do more than remove the obstruction from the saw only after the machine was stopped, instead of when in operation. No danger existed from the machine when it was at a standstill, but the purpose was to have a going machine.

Third. The rulings of the trial court in refusing to set aside the verdict, and in entering judgment thereon, are free from error, and the case upon its merits should be affirmed, with costs.

Affirmed.