**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF PITTSBURGH; et al., Plaintiffs,**

v.

**OPPENHEIM, APPEL, DIXON & CO., a partnership, Defendant.**

**OPPENHEIM, APPEL, DIXON & CO., a partnership, Third-Party Plaintiff,**

v.

**E. Keith OWENS, et al., Third-Party Defendant.**

**No. 85 Civ. 4163 (MEL).**

United States District Court, S.D. New York.

May 28, 1986.

Harvey Kurzweil, Jonathan W. Miller, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for plaintiffs:

Frederick T. Davis, Patterson, Belknap, Webb & Tyler, New York City, for defendant Oppenheimer.

Robert G. Morvillo, Obermaier, Morvillo & Abramowitz, New York City, for nonparty Memel, Jacobs.

Marc Rowin, Lynch, Rowin, Burnbaum & Crystal, New York City, for third-party E. Keith Owens.

Mark A. Miller, Stutman, Treister & Glatt, Los Angeles, Cal., for Sam Jones, Chapter 7 Trustee, Comark.

MICHAEL H. DOLINGER, United States Magistrate:

Three savings and loan associations and the City of Farmington, New Mexico commenced this action in 1985 to recover for losses incurred as a result of the financial collapse of Comark, a California-based government securities dealer. The plaintiffs were customers of Comark and seek to hold Comark's former auditor—Oppenheim, Appel, Dixon & Co. ("OAD")—responsible for their damages based on a variety of federal statutory and state com-

mon-law and statutory causes of action.[1] In its turn OAD has impleaded the former general partners of Comark—which is now in bankruptcy proceedings in the Central District of California—together with the former general counsel of Comark, Daniel Harkins, Esq., and Comark's former outside counsel, John J. Giovannone and his firm, Memel, Jacobs, Pierno, Gersh & Ellsworth.

At present the Court faces a set of related motions by various of the parties concerning the proposed disclosure by Comark's former general counsel, Mr. Harkins, of information that is concededly within the scope of the attorney-client privilege. . Mr. Harkins proposes to provide this information, in the form of documents and deposition testimony, on the theory that, as a named third-party defendant, he is entitled to use in his defense any helpful information even if it would otherwise be protected from disclosure by his client's privilege. None of the other parties nor Comark's bankruptcy trustee—who has appeared solely for purposes of these motions—disagrees with the general proposition that such a "self-defense" exception to the privilege has been recognized by the Second Circuit. Nonetheless they are in dispute as to the preliminary showing, if any, that must be made before a party-attorney may override the privilege, and as to the scope of the disclosure that may be made if the exception is established.

The announced intention of Mr. Harkins to make the disclosures in question initially triggered a motion for a protective order by third-party defendant E. Keith Owens, formerly a general partner of Comark. Mr. Owens has since conceded that he has no standing to invoke the privilege of Comark, *see CFTC v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 1992–96, 85 L.Ed.2d 372 (1985) (trustee of corporation in bankruptcy holds the privilege), but he claims to be asserting a personal privilege on the theory that, as a general partner, he was personally liable for Comark's debts and accordingly Harkins was necessarily functioning as his attorney when representing Comark. Owens contends that the "self-defense" exception is limited to information that is "necessary" to the attorney's defense and furthermore that no disclosure may be permitted unless OAD, as the discovering party, establishes a *prima facie* case against Harkins on its claim that he aided and abetted a fraud by Comark.

The privilege of Comark has been asserted in this case by the bankruptcy trustee, Sam Jonas, who appeared in this action at the request of the Court. Initially, the trustee did not address the questions of the "self-defense" exception but has since urged that Harkins must demonstrate, on a document-by-document basis, the "necessity" for each item of information that he proposes to disclose.

Not surprisingly, OAD has argued that no initial showing by it or by Harkins is necessary before he may disclose otherwise privileged information. OAD also asserts that the disclosure may encompass all information that may be useful to Harkins and, necessarily, all related information— even if harmful to Harkins—so that waiver of the privilege will not result in unfairness to OAD.

Apart from the "self-defense" issue, OAD has sought to obtain the same material by its own cross-motion to compel disclosure by Harkins; this motion is premised on the assertion that the otherwise protectible communications come within the "fraud" exception to the privilege. All of the other parties as well as the trustee oppose this motion on the ground that OAD has not made an adequate showing of

---

**1.** Plaintiffs assert claims under the federal securities laws and RICO and allege as well claims that are said to arise under the New Mexico fraud, securities and racketeering statutes. Plaintiffs also assert state common-law claims for fraudulent misrepresentation, negligent misrepresentation, aiding and abetting and conspir-

acy to commit fraudulent misrepresentations, and conversion. By Opinion and Order dated February 24, 1986, the District Court dismissed without prejudice the securities fraud claims and a portion of the racketeering claims and the fraudulent misrepresentation claim.

fraud and of the nexus between the communications at issue and the alleged fraud.

For the reasons that follow, discovery from Mr. Harkins will be permitted to proceed to the extent indicated based upon the "self-defense" exception to the privilege. Since the disclosure order pursuant to this principle is coextensive with the discovery that would be available under the "fraud" theory, I do not reach OAD's cross-motion.

*Analysis*

### A. The Governing Law

Although not explicitly addressed, the parties appear to concede the applicability of federal law, which they uniformly cite in their papers. This appears to be correct.[2]

The pertinent choice-of-law rule is established by Fed.R.Evid. 501. It provides that privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience..." except that, "with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege...shall be determined in accordance with State law."

■ Although plaintiff asserts principally state law claims against OAD, the information at issue is also pertinent to the federal claims it asserts and to the third-party claims asserted by OAD based upon those federal claims. When evidence that is the subject of an asserted privilege is relevant to both federal and state law claims, the courts have consistently held that federal law governs the privilege.

**2.** OAD advises that the bankruptcy judge in the Comark proceeding expressed the view that California law governs the assertion or waiver of the privilege. For the reasons that follow, I respectfully disagree.

**3.** The choice-of-law rule adopted will be significant since the California self-defense exception is narrower than the version that appears to have been implicitly approved by the Second Circuit. As will be seen, that rule permits disclosure by an attorney sued by someone other than the client even if the attorney is not accused of failing to fulfill his duty to his client. California law does not so provide. *See* Cal.

*E.g., Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 104 (3d Cir.1982); *Sirmans v. City of South Miami,* 86 F.R.D. 492, 494–95 (S.D.Fla.1980); *FDIC v. Mercantile Nat'l Bank of Chicago,* 84 F.R.D. 345, 349 (N.D.Ill.1979); *Robinson v. Magovern,* 83 F.R.D. 79, 84–85 (W.D.Pa.1979); *Lewis v. Capital Mortg. Investments,* 78 F.R.D. 295, 313 (D.Md. 1977). This approach is consistent with the Senate Report accompanying the Senate's version of Rule 501, which states that "[i]t is also intended that the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case." *See* S.Rep. No. 93–1277, *reprinted in* 1974 U.S. Code, Cong. & Admin. News 7051, 7059 n. 16; 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 501[02] at 501–21 to 22 (1985). Accordingly federal law governs the attorney-client privilege issues in this case.[3]

### B. The "Self-Defense" Exception to the Attorney-Client Privilege

The principle has long been accepted that, in appropriate circumstances, an attorney may disregard the privilege of a current or former client, and disclose otherwise protected attorney-client communications. The definition of the appropriate circumstances has, however, been a matter of some dispute.[4]

The most frequently invoked rule, which was principally a product of nineteenth-century American common law, permitted disclosure by the attorney if he was suing the client to collect a fee, *e.g., Mitchell v.*

Evid.Code § 958 (1966), which defines the exception as follows:

> There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship.

This formulation parallels Federal Standard of Evidence 503(d)(3).

**4.** A helpful summary of the history of this exception to the privilege is provided in Levine, *Self-Interest or Self-Defense: Lawyer Disregard of the Attorney-Client Privilege for Profit and Protection,* 5 Hofstra L.Rev. 783, 786–801 (1977).

*Bromberger*, 2 Nev. 345, 349 (1866); *cf. Nakasian v. Incontrade, Inc.*, 409 F.Supp. 1220, 1224 (S.D.N.Y.1976); if he was being sued by the client for malpractice, *e.g., Nave v. Baird*, 12 Ind. 318, 319 (1859); or if his client challenged his competence or integrity even though the attorney was not a party to the lawsuit. *E.g., State v. Madigan*, 66 Minn. 10, 68 N.W. 179 (1896).[5]

In each of these circumstances, the factual dispute is, in effect, between the attorney and his client. *See* Levine, *supra*, 5 Hofstra L.Rev. at 796. To the extent that the client initiates the dispute, he can be said to have put in issue his communications with his attorney and thus waived his right to the protection of the privilege. *See, e.g.*, 8 J. Wigmore, *Evidence* ¶ 2327(6) at 638 (McNaughton rev. 1961); *Laughner v. United States*, 373 F.2d 326, 327 n. 1 (5th Cir.1967); *United States v. Mierzwicki*, 500 F.Supp. 1331, 1335 (D.Md.1980); *cf. Joy v. North*, 692 F.2d 880, 893–94 (2d Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *United States v. Aronoff*, 466 F.Supp. 855, 862 (S.D.N.Y.1979). In the fee collection case, even though it is initiated by the attorney and thus not easily characterized as a waiver by the client, invasion of the privilege was justified, according to the courts, because it would be a "manifest injustice" to "permit [ ] a client to use the privilege to his attorney's disadvantage." Levine, *supra*, 5 Hofstra L.Rev. at 793 (*citing, inter alia, Mitchell v. Bromberger, supra*, 2 Nev. at 349; *Stern v. Daniel*, 47 Wash. 96, 91 P. 552 (1907)). In short, the traditional rule did not contemplate an exception to the privilege merely because it was in the attorney's pecuniary or legal interest to make the disclosure, such as when he was sued by someone other than the client. *See* Levine, *supra*, 5 Hofstra L.Rev. at 797–98 & n. 73.[6]

This narrow rule was in general followed in the wording of Uniform Rule of Evidence 26(2)(c) and Federal Standard of Evidence 503(d)(3). Both permit disclosure only of a "communication relevant to an issue of breach of duty by the lawyer to his client or by the client to his lawyer." *See* 2 *Weinstein's Evidence, supra*, at 503–2. As Professor Weinstein notes: "[T]he exception is required by consideration of fairness and policy when questions arise out of dealings between attorney and client, as in cases of controversy over attorney's fees, claims of inadequacy of representation, or charges of professional misconduct." *Id.* at 503–7 (*citing, inter alia*, C. McCormick, *Evidence* § 95 (2d ed. 1972); Cal.Evid.Code § 958). As the examples suggest, the wording is apparently designed to limit the exception to instances in which the client and attorney are in conflict: "Standard 503(d)(3) codifies the generally accepted view that when the attorney and client become opponents in a subsequent controversy, the attorney may, to the extent necessary to defend his rights, reveal any communication or advice given." *Id.*, ¶ 503(d)(3)[01] at 503–72 to 73.[7]

If the foregoing authority were deemed to govern the scope of the privilege and the exceptions to it in this case, it is at least doubtful that the proposed disclosure by Harkins would be tenable since his former client does not charge him with a breach of duty in the attorney-client relationship, or indeed in any other respect. Accordingly, to justify his proposed disclosure Harkins points to a different body of law, comprising principally a provision of the ABA's

---

5. The prototypical example of such a claim is the assertion by a convicted defendant that he was denied effective assistance of counsel. *See, e.g., United States ex rel. Richardson v. McMann*, 408 F.2d 48, 53–54 (2d Cir.1969), *vac. on other gds.*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

6. One ostensible exception to this limitation was a New York State Supreme Court decision in *Rochester City Bank v. Suydam*, 5 How.Pr. 254 (N.Y.Sup.Ct.1851), in which the attorney was permitted to make disclosures when sued by a party other than his client. This result appears to have rested on the fact that in substance the dispute was between the attorney and the client. *See id.* at 262.

7. As indicated, this standard is comparable to that of the California provision. *See* p. 560 n. 3, *supra*.

Code of Professional Responsibility—DR 4–101(C)(4)—and a Second Circuit decision interpreting that provision.

The Code provision states that, notwithstanding the general prohibition against disclosure by the attorney of the "confidences" and "secrets" of the client,[8] he may make disclosure of

> [c]onfidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.

DR 4–101(C)(4). Although the notes to this provision could be read as reflecting an intention to incorporate only the traditional rule that an attorney may reveal otherwise privileged information when sued by the client or charged by him with malfeasance or when the attorney sues for fees, *see* DR 4–101 Note 19,[9] the wording of the provision itself is considerably broader. It appears to encompass disclosure when the attorney is being sued by someone other than the client or, indeed, when an "accusation" of misconduct has been levelled against the attorney, even if a suit has not been filed.

This broader view of DR 4–101 has been explicitly endorsed by the Second Circuit in *Meyerhofer v. Empire Fire & Marine Ins. Co.*, 497 F.2d 1190, 1194–96 (2d Cir.), *cert. denied*, 419 U.S. 998, 95 S.Ct. 314, 42 L.Ed.2d 272 (1974). The initial question, however, is whether *Meyerhofer* is controlling in this case.

Plaintiffs in *Meyerhofer* commenced a securities fraud class action against an insurance company, its officers and directors, an underwriter, certain selling shareholders, and the attorneys that had represented the insurance company in connection with a public offering. Apparently shortly after the filing of the complaint, one of the defendant attorneys—Stuart Charles Goldberg, Esq.—approached plaintiffs' counsel and offered to demonstrate that he had not been involved in whatever fraud may have occurred. To substantiate his innocence he provided to plaintiffs' counsel a copy of an affidavit, with attachments, that he had previously prepared for and submitted to the Securities and Exchange Commission in connection with its investigation of the transaction. Apparently satisfied with this information, plaintiffs dropped Goldberg as a defendant.

On this set of facts the district court dismissed the complaint without prejudice and enjoined plaintiff's attorneys and Goldberg "from acting as counsel or participating with counsel for plaintiffs in . . . any . . . action against Empire involving the transactions placed in issue in this lawsuit and from disclosing confidential information to others." *Id.* at 1193. In so ruling the Court relied upon "the broader obligations of Canons 4 and 9" of the Code of Professional Responsibility. *Id.* at 1194.[10]

---

**8.** "Confidence" is defined as "information protected by the attorney-client privilege under applicable law," whereas "secret" is deemed to be "other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR 4–101(A).

**9.** Note 19 quotes at length from ABA Opinion 250 (1943), which cites the following definition of the rule:

> "Mr. Jones, in his COMMENTARIES ON EVIDENCE, 2d Ed. Vol. 5, § 2165, states the exception thus: 'It has frequently been held that the rule as to privileged communications does not apply when litigation arises between attorney and client to the extent that their communications are relevant to the issue. In such cases, if the disclosure of privileged communications becomes necessary to protect the at-

torney's rights, he is released from those obligations of secrecy which the law places upon him. He should not, however, disclose more than is necessary for his own protection. It would be a manifest injustice to allow the client to take advantage of the rule of exclusion as to professional confidence to the prejudice of his attorney, or that it should be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights. In such cases the attorney is exempted from the obligations of secrecy." *But see* DR 4–101 Note 19 (*quoting* 2 *Mechem on Agency* § 2313, which formulates a somewhat broader exception).

**10.** Canon 9 requires that counsel "avoid even the appearance of professional impropriety." *See id.* at 1194 n. 1.

On appeal the Second Circuit reversed the dismissal and disqualification orders except insofar as they enjoined Goldberg "from acting as a party...in any action arising out of the facts herein alleged, or from disclosing material information except on discovery or at trial...." *Id.* at 1196. In so holding, the Court observed that the suit had been based on disclosure by Empire and not Goldberg, who had communicated with plaintiffs' attorneys only after he was named as a defendant. *Id.* at 1194. According to the Court, these circumstances brought Goldberg's disclosures within the scope of DR 4–101(C):

Despite the breadth of paragraphs EC 4–4 and DR 4–101(B), DR 4–101(C) recognizes that a lawyer may reveal confidences or secrets necessary to defend himself against "an accusation of wrongful conduct." This is exactly what Goldberg had to face when, in their original complaint, plaintiffs named him as a defendant who wilfully violated the securities laws.

The charge, of knowing participation in the filing of a false and misleading registration statement, was a serious one. The complaint alleged violation of criminal statutes and civil liability computable at over four million dollars. The cost in money of simply defending such an action might be very substantial. The damage to his professional reputation which might be occasioned by the mere pendency of such a charge was an even greater cause for concern.

Under these circumstances Goldberg had the right to make an appropriate disclosure with respect to his role in the public offering. Concomitantly, he had the right to support his version of the facts with suitable evidence.

*Id.* at 1194–95. The Court went on to conclude that the particular disclosure made by Goldberg—via the detailed affidavit and exhibits—was justifiable under the circumstances even though it not only dealt

with his role in preparing the offering plan but also with the discovery by the underwriter's counsel of an intended non-disclosure in connection with another transaction. *See id.* at 1195. As explained by the Court, Goldberg "was clearly in a situation of some urgency....," he consulted with his own attorney before making the disclosure, and disclosure of the entire SEC submission was an effective way of demonstrating his innocence. *Ibid.*[11]

*Meyerhofer* does not directly control the present case. The Second Circuit did not purport to adjudicate an attorney-client privilege claim or an attempt by an attorney to overcome his client's assertion of the privilege. What was at issue was an alleged breach of the standards of ethical conduct defined by the Code of Professional Responsibility, and the pertinent provisions of the ABA's Code are not necessarily coterminous with the privilege. *See generally* Levine, *supra*, 5 Hofstra L.Rev. at 806–08.

The Code provision is, in one respect, broader than the commonly recognized privilege since it covers not merely information protected under the privilege—the so-called client "confidence"—but also any other information obtained by the attorney in the course of his "professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR 4–101(A) (defining "secret"). On the other hand, the Code appears to narrow the client's protection from that recognized in the common law insofar as it authorizes disclosure by the attorney whenever he is accused of wrongful conduct, and it is to be assumed that such a narrowing by the ABA does not automatically or necessarily result in a corresponding change in the rules of privilege recognized by the courts. *See, e.g., N.L. R.B. v. Harvey,* 349 F.2d 900, 906 (4th Cir.1965). *Cf. Bates v. State Bar,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977)

---

**11.** The Court also suggested that the proscription of Canon 4 against disclosure of client confidences does not cover the additional sensitive information disclosed by Goldberg since it was not derived from Empire. *Id.* at 1195.

(permitting attorney advertising); *Bottaro v. Hatton Associates,* 680 F.2d 895, 896 (2d Cir.1982), *citing Armstrong v. McAlpin,* 625 F.2d 433, 444–45 & n. 22 (2d Cir.1980), *vac. on other gds.,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d· 835 (1981) (declining to adopt automatic application of ABA ‚Code Canons 4 and 9 to require attorney disqualification); *J.P. Foley & Co. v. Vanderbilt,* 523 F.2d 1357, 1359–60 (2d Cir.1975) (Gurfein, J., concurring).[12]

The ambiguous scope of *Meyerhofer* is also suggested by the fact that the Second Circuit affirmed the District Court's orders insofar as they barred Goldberg from disclosing any "material information" relating to facts in the case except in the course of discovery or at trial. 497 F.2d at 1196. This indicates that the precise contours of the attorney-client privilege in that case were still to be decided and would be dealt with by the District Court in a manner that permitted the client to articulate and assert whatever privilege claims it wished to interpose.

The cases that have followed *Meyerhofer* have not shed a great deal of light on the parameters of the exception to the attorney-client privilege, although all are consistent with a recognition of the exception in some form. Most of the cases have either involved solely questions of attorney disqualification, *e.g., Warpar Mfg. Corp. v. Ashland Oil, Inc.,* 606 F.Supp. 852, 854–57 (N.D. Ohio 1984); *George v. LeBlanc,* 78 F.R.D. 281, 288–89 & n. 4 (N.D.Tex.), *aff'd,* 565 F.2d 1213 (5th Cir.1977), or limited their comments—whether dictum or holding—to the effect of an attack by a client on the conduct of his attorney. *See, e.g.,*

*United States v. Sindona,* 636 F.2d 792, 804 (2d Cir.1980), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981) (mischaracterizing *Meyerhofer* as involving client challenge to attorney's conduct); *International Elect. Corp. v. Flanzer,* 527 F.2d 1288, 1292 (2d Cir.1975) (invoking attorney disqualification; Court asserts in dictum that an attack by a client on his attorney "may even permit the divulging of confidences in defense."). *Cf. Doe v. A Corp.,* 709 F.2d 1043, 1048–49 (5th Cir. 1983) (attorney not barred from prosecuting own lawsuit merely because he previously represented defendant). Others have recognized the right of an attorney under the Code to disclose privileged information if charged with, or even investigated for, criminal misconduct. *See United States v. Amrep Corp.,* 418 F.Supp. 473, 474 (S.D.N.Y.1976) (attorney as defendant); *Application of Friend,* 411 F.Supp. 776, 777 (S.D. N.Y.1975) (attorney disclosure to grand jury). Finally, several courts have indicated that the attorney is entitled to disclose privileged information over an assertion of privilege when sued by someone other than the former client on an aider-and-abettor theory, provided that the information is necessary to the attorney's defense. *See, e.g., Housler v. First Nat'l Bank of East Islip,* 484 F.Supp. 1321, 1322–24 (E.D.N.Y.1980) (prohibiting disclosure of privileged information by former attorney, who was named as third-party defendant; court views *Meyerhofer* as narrow holding and apparently would permit disclosure of information solely if necessary to defense by attorney against charge of misconduct). *Cf. Rosen v. N.L.R.B.,* 735 F.2d 564, 575–77 (D.C.Cir.1984) (suggesting

---

12. The relationship between the Code and the privilege is suggested by the Comment to Rule 1.6 of the Model Rules of Professional Conduct:

The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work-product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer

confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.

*See also* Rhode, *Why the ABA Bothers: A Functional Perspective on Professional Codes,* 59 Texas L.Rev. 689, 709–10 (1981).

in dictum that attorney accused of misconduct by administrative law judge could intervene in proceeding and "could have argued" that accusation justified disclosure of otherwise privileged information).

The doubt as to *Meyerhofer*'s direct applicability is further underscored by a review of the opinion, which does not even make plain whether the information disclosed by Goldberg came within the ambit of the attorney-client privilege at the time of its disclosure. Indeed, this seems doubtful since it consisted of an affidavit and exhibits previously supplied to the SEC. It is thus quite conceivable that the material constituted client "secrets"—as defined by DR 4-101(A)—and thus was not within the privilege in any event.

■ Notwithstanding the distinctions that could be drawn between the *Meyerhofer* case and the present situation, there is good reason for recognizing a "self-defense" exception to the attorney-client privilege in appropriate circumstances. First, if an attorney is sued for alleged misconduct in representing a client, it is self-evident that he has a compelling interest in being able to defend himself. Second, that interest may well outweigh the interest of the client in maintaining the confidentiality of his communications, particularly if disclosure of those communications will not imperil the legal interests of the client. *Cf. Meyerhofer v. Empire Fire & Marine Ins. Co., supra,* 497 F.2d at 1194 (noting that attorney's disclosures were made after suit was filed and thus did not trigger the suit against his former client). Indeed, even the most cogent critic of the *Meyerhofer* decision has acknowledged the appropriateness of recognizing a limited self-defense exception to the privilege. *See* Levine, *supra,* 5 Hofstra L.Rev. at 819–26. Third, such disclosure will serve the truth-finding function of the litigation process, and is thus consistent with the general principle of narrowly construing evidentiary privileges. *See, e.g.,* In re *Horowitz,* 482 F.2d 72, 81 (2d Cir.), *cert. denied,* 414 U.S. 87, 94

S.Ct. 64, 38 L.Ed.2d 86 (1973); 2 *Weinstein's Evidence, supra,* ¶ 501[01] at 501–13 (discussing Advisory Committee's rationale for proposed federal rules governing privileges).[13] Indeed, this policy was underscored in the legislative history of Fed. R.Evid. 501 when the Senate Report suggested that "[i]f the rule proposed here results in two conflicting bodies of privilege law applying to the same piece of evidence in the same case, it is contemplated that the rules favoring reception of the evidence should be applied." S.Rep. No. 93-1277, *supra,* 1974 U.S.Code, Cong. & Admin.News at 7059 n. 17.

Furthermore, although perhaps not directly controlling, *Meyerhofer* and succeeding cases surely provide substantial support for permitting an attorney in appropriate cases to disregard his client's privilege. The Second Circuit in *Meyerhofer* plainly recognized the importance of the attorney's ability to defend himself against *bona fide* claims of misconduct that could, if proven, impose substantial liability on him. Moreover, although not explicitly stated, the Court appears to have assumed that in such a case the attorney's interest in disclosure—at least to the extent necessary to defend himself—will usually outweigh the more general interest of the client in preserving confidentiality:

> DR 4-101(C) recognizes that a lawyer may reveal confidences or secrets necessary to defend himself against "an accusation of wrongful conduct." This is exactly what Goldberg had to face when, in their original complaint, plaintiffs named him as a defendant who wilfully violated the securities law....
>
> Under these circumstances Goldberg had the right to make an appropriate disclosure with respect to his role in the public offering. Concomitantly, he had the right to support his version of the facts with suitable evidence.

*Id.* at 1194–95.

The fact that the client in *Meyerhofer* had not asserted its privilege, if any, in

---

**13.** *Accord, e.g.,* C. McCormick, *Evidence,* § 77 at 156–57 (2d ed. 1972); Krattenmaker, *Testimonial Privileges in Federal Courts: An Alternative to* *the Proposed Federal Rules of Evidence,* 62 Geo. L.J. 61, 85 (1973).

opposition to the disclosure is ultimately insignificant. The client apparently never had an opportunity to do so, since Goldberg made the disclosures informally to plaintiffs' attorneys at the outset of the suit; and the Second Circuit can scarcely have intended to permit disclosure by an attorney without notice to the client or court supervision while prohibiting such disclosure with notice and judicial supervision. Indeed, the *Meyerhofer* court's affirmance of the district court's protective order against further disclosure by Goldberg except in discovery or at trial indicates that disclosure should ordinarily be permitted only in the course of formal proceedings and under court supervision.[14]

Finally, I note that the assumption underlying *Meyerhofer*—that an attorney may disclose privileged information if necessary to defend against pending civil or criminal charges—appears to have general support in the case law, albeit largely in dictum. *See, e.g., NLRB v. Rosen, supra,* 735 F.2d at 576; *Doe v. A Corp., supra,* 709 F.2d at 1048–50; *Housler v. First Nat'l Bank of East Islip, supra,* 484 F.Supp. at 1322–23 & nn. 3–4; *Sullivan v. Chase Inv. Services of Boston, Inc.,* 434 F.Supp. 171, 188 (N.D.Cal.1977); In re *Conduct of Robeson,* 293 Or. 610, 652 P.2d 336, 344–45 (1982) (per curiam) (en banc); *Heslin v. Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 461 A.2d 938, 946 n. 16 (1983). *See also George v. LeBlanc, supra,* 78 F.R.D. at 289 n. 4.

In sum, the exception for attorney selfdefense is recognized and accepted by the courts, albeit with varying degrees of

warmth. The key issue, then, involves what limitations—both procedural and substantive—must be placed on its invocation.

The most obvious potential abuse is that, in an otherwise *bona fide* suit against the client, the plaintiff may assert claims against the attorney for the sole purpose of forcing counsel to divulge confidential material in order to defend himself. *See, e.g., Sullivan v. Chase Inv. Service of Boston, Inc., supra,* 434 F.Supp. at 188–89; Levine, *supra,* 5 Hofstra L.Rev. at 815. To avoid this danger in the present case, third-party defendant Owens urges that OAD, the party that has asserted the aiding-and-abetting claim against the attorney, be required to establish a *prima facie* case against Harkins before disclosure by him is permitted.

■ I need not reach the question of whether any showing is required of OAD, although I note that it is Harkins, and not OAD, who is the immediate beneficiary of an order permitting disclosure. In any event, OAD's claim against Harkins is plainly legally sufficient—indeed, the District Court recently denied a motion to dismiss a similar claim asserted against Comark's outside counsel, the firm of Memel, Jacobs—and the evidentiary record made by OAD in support of its cross-motion to compel is sufficient to establish that the claim asserted against Harkins is not pretextual.[15]

The second question is the proper scope of disclosure to be permitted under the exception. The Second Circuit in *Meyerhofer* expressed some concern that the attorney in that case had revealed considerably more information than simply the facts

---

**14.** The fact that the information disclosed in *Meyerhofer* may not have been subject to the attorney-client privilege is also not crucial in evaluating the significance of that decision. A fair reading of the opinion strongly suggests that the Court paid no attention to the potential distinction between "confidences" and "secrets" and was prepared to approve Goldberg's disclosure of either variety of information if it was sufficiently narrowly tailored to meet his need to disprove his liability.

**15.** OAD proffers evidence that at least arguably supports a suspicion that Harkins assisted a fraud committed by Comark. The specific ac-

tivities alleged include giving legal advice to Comark to assist it in delaying disclosure of the improper commingling of partnership and client assets, and providing misleading information to California state regulatory officials. Without characterizing the weight of the evidence, I find it sufficient to demonstrate that OAD's claims against Harkins pass muster under Fed.R.Civ.P. 11. *See, e.g., Nemeroff v. Abelson,* 620 F.2d 339, 350 (2d Cir.1980); *see also Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985). That should suffice for present purposes.

relevant to whether he had been involved in the asserted fraud. Although the Court there excused Goldberg's generosity with his client's secrets by noting that the attorney was apparently "in a situation of some urgency..." and had consulted counsel prior to the disclosure, 497 F.2d at 1195, the Court did direct that any subsequent disclosures be supervised by the district court. *Id.* at 1196.

In this case, of course, the "urgency" of the situation is attentuated by the fact that the proposed disclosure is to be made in the context of ongoing pre-trial discovery. Accordingly, the Court can limit the scope of the disclosure in order to reconcile, to the extent possible, the competing interests of Harkins in disproving OAD's allegations of wrongdoing by him and of his client Comark in protecting the confidentiality of its communications with its attorneys.[16]

To this end, Harkins was directed to submit to the Court for its *in camera* review all of the documents he proposes to disclose, together with an affidavit explaining the necessity for his proposed disclosures, both by deposition and by document production. The trustee, as the holder of the privilege, has responded to Harkins' showing on this point.

■ In reviewing the proposed disclosures, I have applied a standard of reasonable necessity, a somewhat opaque term derived from Rule 1.6 of the Model Rules of Professional Conduct. *See* 52 U.S.L.W. at 5, 6. In effect, disclosure is authorized for those items that, as a practical matter, seem likely to provide significant assistance to Harkins' defense. In general terms, this standard permits Harkins to testify about all of his conversations with Comark officers or employees concerning the commingling problem since it will be necessary for Harkins to explain what he knew about the issue, what he did about it, what he advised his client to do about it, and what he did not do about it. Necessar-

ily, the production of documents must be similar in scope.

■ A related issue is whether discovery should be ordered in addition to that which Harkins proposes to reveal in his defense. Specifically, OAD raises the question whether it should be provided all privileged documents—if any—that are potentially damaging to Harkins' defense and that are thus not being volunteered by him. Assuming hypothetically that Harkins chose to provide helpful documents while not disclosing any damaging ones, I conclude that fairness would require disclosure of all documents pertaining to the communications at issue, whether Harkins volunteered them or not. This is a logical and unavoidable extension of the long-settled rule that a client's disclosure of a portion of an attorney-client privileged document, or of some but not all privileged documents relating to a particular event, may constitute a waiver of the privilege. As described by Wigmore:

> [W]hen [the client's] conduct touches a certain point of disclosure, fairness requires that his privilege cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder....

8 Wigmore, *supra*, § 2327 at 636. In such a situation, at a minimum waiver will be found for so much of the withheld information "as will make the disclosure complete and not misleadingly one-sided." *Teachers Insur. & Annuity Ass'n of America v. Shamrock Broadcasting Co.*, 521 F.Supp. 638, 641 (S.D.N.Y.1981). *See, e.g., In re Sealed Cases*, 676 F.2d 793, 817 (D.C.Cir. 1982).

These waiver decisions differ from this case because the initial disclosure here is being made by the attorney and not by the client. Nevertheless, the paramount concern must be fairness to the party against whom the information disclosed by the at-

---

**16.** I note also that, as in *Meyerhofer,* the disclosure sought to be made by Harkins would of course not induce the filing of a suit against his client. Comark has been held liable for fraud in a related case and is not a party here. As for Owens, even assuming he were deemed a client of Harkins, he is already a third-party defendant in this action.

torney is to be used—in this case OAD—and it necessarily follows from the initial decision to override the privilege to permit Harkins to disclose relevant favorable information, that he must also be compelled to disclose relevant unfavorable information.

In order to assure that the disclosure is not misleadingly one-sided, the Court directed Harkins to submit for *in camera* review all documents originally listed by him as privileged that he has not sought authorization to disclose under the "self defense" exception to the privilege. That submission has been made and the documents inspected for the purpose of identifying any that appear to relate to communications concerning the alleged fraud.

### C. *The Authorized Disclosure*

Upon a review of the *in camera* affidavit of Daniel Harkins, sworn to April 29, 1986, and the annexed documents, I find that disclosure, in whole or in part, of all of the documents he proposes to produce is reasonably necessary to Harkins' defense. The only limitation is that certain portions of certain of the documents appear not to relate to the issues raised by the lawsuit. These document fragments are identified by the trustee in his "Response ... to the Affidavit of Daniel M. Harkins", and in his reply Harkins does not dispute the trustee's assertion that the identified document fragments are irrelevant to his defense. Upon review, I agree in general with the trustee's characterization, and accordingly, with very limited exceptions, find that there is no reason to permit disclosure of those portions of the privileged documents. The segments to be withheld from disclosure by Harkins are listed in an appendix to this Memorandum and Order.

Having also reviewed those additional documents that Harkins has not sought to disclose, I conclude that none is sufficiently pertinent to his defense to justify overriding Comark's privilege.

■ Finally, Harkins also will be permitted to testify about the disclosed documents and about his role in the events that are the subject of OAD's claims against him.

### *OAD's Cross-Motion*

In order to assure itself access to the otherwise privileged information that Harkins has sought to disclose, OAD has cross-moved to compel such disclosure on the basis that the communications in question come within the so-called "fraud" exception to the attorney-client privilege. To pierce the privilege on this basis, the movant bears the burden of establishing probable cause to believe that the client has committed or intended to commit a fraud and that the otherwise protected communications were in furtherance of that fraud. *See, e.g.,* In re *Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1038–39 (2d Cir. 1984); In re *John Doe Corp.,* 675 F.2d 482, 491 & n. 7 (2d Cir.1982). As explained by the Second Circuit, the evidence must be sufficient for "a prudent person [to] have a reasonable basis to suspect the perpetration or attempted perpetration of a ... fraud, and that the communications were in furtherance thereof." In re *Grand Jury Subpoena Duces Tecum, supra,* 731 F.2d at 1039.

In this case a review of the pertinent documents reflects that even if OAD's motion were granted, the scope of the resultant disclosure could be no broader than that encompassed by the directive authorizing disclosure by Harkins under the self-defense exception to the privilege. In both cases, disclosure would be made of all communications between client and attorney concerning either the particular problem that underlies the alleged fraud or the response by the client and the attorney to that problem. Accordingly, it is unnecessary to determine whether OAD's evidentiary showing would suffice to establish the requisite probable cause.[17]

---

**17.** Since such a determination would constitute a preliminary evaluation of the merits of the

case in the context of a discovery motion—a context in which the Court may not be well

## CONCLUSION

For the reasons stated, the motion of third-party defendant E. Keith Owens for a protective order precluding disclosure by third-party defendant Daniel M. Harkins, Esq., is denied to the extent indicated, and disclosure is directed to be made in accordance with this Memorandum and Order. In view of the foregoing, the cross-motion to compel of Oppenheim, Appel, Dixon & Co. is denied.

## APPENDIX 1

Deletions Required from
Documents to be Disclosed
by Daniel M. Harkins, Esq.

| Document Number (as numbered in attachment to Affidavit of Mr. Harkins | Deletion |
|---|---|
| 2 | Delete first page from top until "customer securities. . . ." Delete second page |
| 3 | Delete all of first page starting directly after "b) plan" |
| 4 | Delete items labelled "1)" and "2)" |
| 5 | Delete last page (A 00189) |
| 6 | Delete items labelled "Cal. . ." and "2" from A 00185. |
| 8 | Delete reference to "Cal. . . ." on A 00181 and items "1" ("Report . . .") and "25" ("Expenses. . . .") |
| 13 | Delete entry starting "13 mm" and "B" on A 00171 |
| 14 | Delete item starting "intra. . ." on A 00166; last two full lines on A 00167 and first four lines on A 00168 |
| 15 | Delete all of A 00163 up to "Q about 8/31/81. . ."; last two lines on A 00164 and second through fifth lines on A 00165 |
| 20 | Delete two lines starting "SR. . .", one line starting "possible. . ." and last two lines on A 00137 |
| 22 | Delete all of A 00123 |
| 24 | Delete first two lines on A 00093, first line on A 00095, all of A 00096 and A 00097, the last line of A 00098, items "1" and "4" on A 00099, and all but the last four lines on A 00100 |
| 25 | Delete first three lines and everything from line starting with "C" until "All" |
| 26 | Delete item "5" on A 00082 |
| 30 | Delete third line on A 00161 |
| 39 | Delete items "2", "3" and "4" |
| 50 | Delete items starting with "Litigation", "CSI" and "commodities" on A 00038, and first three lines on A 00039 |
| 51 | Delete everything from "JH Salesman" through "much" and from "CB–the $361. . ." to the end of the page on A 00033 |
| 52 | Delete the first two lines of A 00029, the last five lines on A 00030, all of A 00032 and all but the fourth through seventh and last lines of A 00032 |
| 53 | Delete line starting "CB working. . ." and the two lines that follow the word "We. . ." |
| 54 | Delete all but section labelled "Cal" and two lines that start with "TB" on A 00021; delete the sixth through the ninth lines and the eleventh line through the end of the page on A 00022 |
| 55 | Delete all of A 00019 except the two lines re "sales credits", the one line re "trading", and the last five lines; delete all of A 00020 |
| 56 | On A 00017, delete the line referring to "Fla" and the balance of the page starting with "Discussion" |
| 57 | On A 00006, delete the line starting "CAM", the seven lines starting "CSI" and the last three lines of the page; on A 00007, delete the first line |

equipped to weigh the probative value of the evidence—I believe it generally advisable to avoid making such a determination if the same result will be reached on an alternative ground.

58 On A 00004, delete all but the six lines following "TAB"; on A 00005, delete all but the first two lines

59 On A 00002, delete all but the fourth and fifth lines; on A 00003, delete all but the first two lines and the last half of the page (starting "Discuss. . . .")

60 . On A 00000, delete all but the first two lines and the two lines starting "JH"; delete all of A 00001

Note

All documents    The identities of the participants in any meeting should not be deleted.