497 F.2d 1190
 Fed. Sec. L. Rep. P 94,592
Dietrich MEYERHOFER and Herbert Federman,
Appellants-Appellees, Bernson, Hoeniger, Freitag &
Abbey, Appellants, Stuart Charles
Goldberg, Intervenor-Appellant,
v.
EMPIRE FIRE AND MARINE INSURANCE COMPANY et al.,
Appellees-Appellants,Faulkner, Dawkins & Sullivan
Securities Corp., Defendant.
 Nos. 512-514, Dockets 73-2340, 73-2443, 73-2501.
 United States Court of Appeals, Second Circuit.
 Argued Jan. 16, 1974.
Decided June 10, 1974.
 
 Rogers M. Doering, New York City (Simpson, Thacher & Bartlett, and Cynthia M. Cohen, New York City, of counsel), for appellants and cross-appellees Dietrich Meyerhofer, Herbert Federman and Bernson, Hoeniger, Freitag & Abbey.
 Lawrence M. McKenna, New York City (Wormser, Kiely, Allesandroni, Mahoney & McCann, New York City, of counsel), for intervenor-appellant Stuart Charles Goldberg.
 Anthony L. Tersigni, New York City (Aranow, Brodsky, Bohlinger, Benetar, Einhorn & Dann, George Berlstein and Kathryn E. Zenoff, New York City, of counsel), for appellees and cross-appellants Empire Fire and Marine Inc. Co., Gary O. Gross, Yale J. Kaplan, Robert A. Phillips, Francis J. Kratky, Nick Lalich, L. C. Swick and M. M. Jennings, Jr.
 Robert E. Meshel, New York City (D'Amato, Costello & Shea, George G. D'Amato, New York City, of counsel), for appellees and cross-appellants Sitomer, Sitomer & Porges, Alvin L. Sitomer, Stephen J. Sitomer and Robert E. Porges.
 The Securities and Exchange Commission, Lawrence E. Nerheim, Gen. Counsel, Theodore Sonde, Asst. Gen. Counsel and Thodore L. Freedman, Atty., Washington, D.C., as amicus curiae.
 Before MOORE, FRIENDLY and ANDERSON, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 This is an appeal by Dietrich Meyerhofer and Herbert Federman, plaintiffs, and their counsel, Bernson, Hoeniger, Freitag & Abbey, from an order of the United States District Court for the Southern District of New York, dated August 23, 1973, (a) dismissing without prejudice plaintiffs' action against defendants, (b) enjoining and disqualifying plaintiffs' counsel, Bernson, Hoeniger, Freitag & Abbey, and Stuart Charles Goldberg from acting as attorneys for plaintiffs in this action or in any future action against defendant Empire Fire and Marine Insurance Company (Empire) involving the same transactions, occurrences, events, allegations, facts or issues, and (c) enjoining Bernson, Hoeniger, Freitag & Abbey and Stuart Charles Goldberg from disclosing confidential information regarding Empire to others. Intervenor Stuart Charles Goldberg also appeals from said order.
 
 
 2
 Defendants Empire, Gross, Kaplan, Phillips, Kratky, Lalich, Swick, Jennings, Jr., Sitomer, Sitomer & Porges, A. L. Sitomer, S. J. Sitomer and Robert E. Porges cross-appeal from the order insofar as that order failed to disqualify plaintiffs, Meyerhofer and Federman, from acting as class representatives of those who purchased the common stock of Empire, or to enjoin them from disclosing confidential information learned either from Bernson, Hoeniger, Freitag & Abbey or from Stuart Charles Goldberg.
 
 
 3
 The full import of the problems and issues presented on this appeal cannot be appreciated and analyzed without an initial statement of the facts out of which they arise.
 
 
 4
 Empire Fire and Marine Insurance Company on May 31, 1972, made a public offering of 500,000 shares of its stock, pursuant to a registration statement filed with the Securities and Exchange Commission (SEC) on March 28, 1972. The stock was offered at $16 a share. Empire's attorney on the issue was the firm of Sitomer, Sitomer & Porges. Stuart Charles Goldberg was an attorney in the firm and had done some work on the issue.
 
 
 5
 Plaintiff Meyerhofer, on or about January 11, 1973, purchased 100 shares of Empire stock at $17 a share. He alleges that as of June 5, 1973, the market price of his stock was only $7 a share-- hence, he has sustained an unrealized loss of $1,000. Am'd Compl. P9a. Plaintiff Federman, on or about May 31, 1972, purchased 200 shares at $16 a share, 100 of which he sold for $1,363, sustaining a loss of some $237 on the stock sold and an unrealized loss of $900 on the stock retained.
 
 
 6
 On May 2, 1973, plaintiffs, represented by the firm of Bernson, Hoeniger, Freitag & Abbey (the Bernson firm), on behalf of themselves and all other purchasers of Empire common stock, brought this action alleging that the registration statement and the prospectus under which the Empire stock had been issued were materially false and misleading. Thereafter, an amended complaint, dated June 5, 1973, was served. The legal theories in both were identical, namely, violations of various sections of the Securities Act of 1933, the Securities Exchange Act of 1934, Rule 10b-5, and common law negligence, fraud and deceit. Damages for all members of the class or rescission were alternatively sought.
 
 
 7
 The lawsuit was apparently inspired by a Form 10-K which Empire filed with the SEC on or about April 12, 1973. This Form revealed that 'The Registration Statement under the Securities Act of 1933 with respect to the public offering of the 500,000 shares of Common Stock did not disclose the proposed $200,000 payment to the law firm as well as certain other features of the compensation arrangements between the Company (Empire) and such law firm (defendnat Sitomer, Sitomer and Porges).' Later that month Empire disseminated to its shareholders a proxy statement and annual report making similar disclosures.
 
 
 8
 The defendants named were Empire, officers and directors of Empire, the Sitomer firm and its three partners, A. L. Sitomer, S. J. Sitomer and R. E. Porges, Faulkner, Dawkins & Sullivan Securities Corp., the managing underwriter, Stuart Charles Goldberg, originally alleged to have been a partner of the Sitomer firm, and certain selling stockholders of Empire shares.
 
 
 9
 On May 2, 1973, the complaint was served on the Sitomer defendants and Faulkner. No service was made on Goldberg who was then no longer associated with the Sitomer firm. However, he was advised by telephone that he had been made a defendant. Goldberg inquired of the Bernson firm as to the nature of the charges against him and was informed generally as to the substance of the complaint and in particular the lack of disclosure of the finder's fee arrangement. Thus informed, Goldberg requested an opportunity to prove his non-involvement in any such arrangement and his lack of knowledge thereof. At this stage there was unfolded the series of events which ultimately resulted in the motion and order thereon now before us on appeal.
 
 
 10
 Goldberg, after his graduation from Law School in 1966, had rather specialized experience in the securities field and had published various books and treatises on related subjects. He became associated with the Sitomer firm in November 1971. While there Goldberg worked on phases of various registration statements including Empire, although another associate was responsible for the Empire registration statement and prospectus. However, Goldberg expressed concern over what he regarded as excessive fees, the nondisclosure or inadequate disclosure thereof, and the extent to which they might include a 'finder's fee,' both as to Empire and other issues.
 
 
 11
 The Empire registration became effective on May 31, 1972. The excessive fee question had not been put to rest in Goldberg's mind because in middle January 1973 it arose in connection with another registration (referred to as 'Glacier'). Goldberg had worked on Glacier. Little purpose will be served by detailing the events during the critical period January 18 to 22, 1973, in which Goldberg and the Sitomer partners were debating the fee disclosure problem. In summary Goldberg insisted on a full and complete disclosure of fees in the Empire and Glacier offerings. The Sitomer partners apparently disagreed and Goldberg resigned from the firm on January 22, 1973.
 
 
 12
 On January 22, 1973, Goldberg appeared before the SEC and placed before it information subsequently embodied in his affidavit dated January 26, 1973, which becomes crucial to the issues now to be considered.
 
 
 13
 Some three months later, upon being informed that he was to be included as a defendant in the impending action, Goldberg asked the Bernson firm for an opportunity to demonstrate that he had been unaware of the finder's fee arrangement which, he said, Empire and the Sitomer firm had concealed from him all along. Goldberg met with members of the Bernson firm on at least two occasions. After consulting his own attorney, as well as William P. Sullivan, Special Counsel with the Securities and Exchange Commission, Division, of Enforcement, Goldberg gave plaintiffs' counsel a copy of the January 26th affidavit which he had authored more than three months earlier. He hoped that it would verify his nonparticipation in the finder's fee omission and convince the Bernson firm that he should not be a defendant. The Berson firm was satisfied with Goldberg's explanations and, upon their motion, granted by the court, he was dropped as a defendnat. After receiving Goldberg's affidavit, the Bernson firm amended plaintiffs' complaint. The amendments added more specific facts but did not change the theory or substance of the original complaint.
 
 
 14
 By motion dated June 7, 1973, the remaining defendants moved 'pursuant to Canons 4 and 9 of the Code of Professional Responsibility, the Disciplinary Rules and Ethical Considerations applicable thereto, and the supervisory power of this Court' for the order of disqualification now on appeal.
 
 
 15
 By memorandum decision and order, the District Court ordered that the Bernson firm and Goldberg be barred from acting as counsel or participating with counsel for plaintiffs in this or any future action against Empire involving the transactions placed in issue in this lawsuit and from disclosing confidential information to others.
 
 
 16
 The complaint was dismissed without prejudice. The basis for the Court's decision is the premise that Goldberg had obtained confidential information from his client Empire which, in breach of relevant ethical canons, he revealed to plaintiffs' attorneys in their suit against Empire. The Court said its decision was compelled by 'the broader obligations of Canons 4 and 9.'[1]
 
 
 17
 There is no proof-- not even a suggestion-- that Goldberg had revealed any information, confidential or otherwise, that might have caused the instigation of the suit. To the contrary, it was not until after the suit was commenced that Goldberg learned that the was in jeopardy. The District Court recognized that the complaint had been based on Empire's-- not Goldberg's-- didclosures, but concluded because of this that Goldberg was under no further obligation 'to reveal the information or to discuss the matter with plaintiffs' counsel.'
 
 
 18
 Despite the breadth of paragraphs EC 4-4 and DR 4-101(B), DR 4-101(C) recognizes that a lawyer may reveal confidences or secrets necessary to defend himself against 'an accusation of wrongful conduct.' This is exactly what Goldberg had to face when, in their original complaint, plaintiffs named him as a defendant who wilfully violated the securities laws.
 
 
 19
 The charge, of knowing participation in the filing of a false and misleading registration statement, was a serious one. The complaint alleged violation of criminal statutes and civil liability computable at over four million dollars. The cost in money of simply defending such an action might be very substantial. The damage to his professional reputation which might be occasioned by the mere pendency of such a charge was an even greater cause for concern.
 
 
 20
 Under these circumstances Goldberg had the right to make an appropriate disclosure with respect to his role in the public offering. Concomitantly, he had the right to support his version of the facts with suitable evidence.
 
 
 21
 The problem arises from the fact that the method Goldberg used to accomplish this was to deliver to Mr. Abbey, a member of the Bernson firm, the thirty page affidavit, accompanied by sixteen exhibits, which he had submitted to the SEC. This document not only went into extensive detail concerning Goldberg's efforts to cause the Sitomer firm to rectify the nondisclosure with respect to Empire but even more extensive detail concerning how these efforts had been precipitated by counsel for the underwriters having come upon evidence showing that a similar nondisclosure was contemplated with respect to Glacier and their insistence that full corrective measures should be taken. Although Goldberg's description reflected seriously on his employer, the Sitomer firm and, also, in at least some degree, on Glacier, he was clearly in a situation of some urgency. Moreover, before he turned over the affidavit, he consulted both his own attorney and a distinguished practitioner of securities law, and he and Abbey made a joint telephone call to Mr. Sullivan of the SEC. Moreover, it is not clear that, in the context of this case, Canon 4 applies to anything except information gained from Empire. Finally, because of Goldberg's apparent intimacy with the offering, the most effective way for him to substantiate his story was for him to disclose the SEC affidavit. It was the fact that he had written such an affidavit at an earlier date which demonstrated that his story was not simply fabricated in response to plaintiffs' complaint.
 
 
 22
 The District Court held: 'All that need be shown . . . is that during the attorney-client relationship Goldberg had access to his client's information relevant to the issues here.' See Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1973). However, the irrebutable presumption of Emle Industries has no application to the instant circumstances because Goldberg never sought to 'prosecute litigation,' either as a party, compare Richardson v. Hamilton International Corp., 62 F.R.D. 413 (E.D.Pa. 1974), or as counsel for a plaintiff party. Compare T.C. Theatre Corporation v. Warner Brothers Pictures, 113 F.Supp. 265 (S.D.N.Y.1953). At most the record discloses that Goldberg might be called as a witness for the plaintiffs but that role does not invest him with the intimacy with the prosecution of the litigation which must exist for the Emle presumption to attach.
 
 
 23
 In addition to finding that Goldberg had violated Canon 4, the District Court found that the relationship between Goldberg and the Bernson firm violated Canon 9 of the Code of Professional Responsibility which provides that:
 
 
 24
 EC 9-6 Every lawyer (must) strive to avoid not only professional impropriety but also the appearance of impropriety.
 
 
 25
 The District Court reasoned that even though there was no evidence of bad faith on the part of either Goldberg or the Bernson firm, a shallow reading of the facts might lead a casual observer to conclude that there was an aura of complicity about their relationship. However, this provision should not be read so broadly as to eviscerate the right of self-defense conferred by DR4-101(C)(4).
 
 
 26
 Nevertheless, Emle Industries, Inc. v. Patentex, Inc., supra, requires that a strict prophylactic rule be applied in these cases to ensure that a lawyer avoids representation of a party in a suit against a former client where there may be the appearance of a possible violation of confidence. To the extent that the District Court's order prohibits Goldberg from representing the interests of these or any other plaintiffs in this or similar actions, we affirm that order. We also affirm so much of the District Court's order as enjoins Goldberg from disclosing material information except on discovery or at trial.
 
 
 27
 The burden of the District Court's order did not fall most harshly on Goldberg; rather its greatest impact has been felt by Bernson, Hoeniger, Freitag & Abbey, plaintiffs' counsel, which was disqualified from participation in the case. The District Court based its holding, not on the fact that the Bernson firm showed bad faith when it received Goldberg's affidavit, but rather on the fact that it was involved in a tainted association with Goldberg because his disclosures to them inadvertently violated Canons 4 and 9 of the Code of Professional Responsibility. Because there are no violations of either of these Canons in this case, we can find no basis to hold that the relationship between Goldberg and the Bernson firm was tainted. The District Court was apparently unpersuaded by appellees' salvo of innuendo to the effect that Goldberg 'struck a deal' with the Bernson firm or tried to do more than prove his innocence to them. Since its relationship with Goldberg was not tainted by violations of the Code of Professional Responsibility, there appears to be no warrant for its disqualification from participation in either this or similar actions. A fortiori there was no sound basis for disqualifying plaintiffs or dismissing the complaint.
 
 
 28
 Order dismissing action without prejudice and enjoining Bernson, Hoeniger, Freitag & Abbey from acting as counsel for plaintiffs herein reversed. Upon cross-appeal by Empire, Gross, Kaplan, Phillips, Kratky, Lalich, Swick and Jennings, Jr., and cross-appeal by Sitomer, Sitomer and Porges, A. L. Sitomer, S. J. Sitomer and R. E. Porges insofar as said orders failed to enjoin plaintiffs from disclosing confidential information regarding Empire and to disqualify plaintiffs from representing themselves or a similar class of Empire stockholders, appeals dismissed. To the extent that the orders appealed from prohibit Goldberg from acting as a party or as an attorney for a party in any action arising out of the facts herein alleged, or from disclosing material information except on discovery or at trial, they are affirmed.
 
 
 
 [1]
 Code of Professional Responsibility
 Canon 4
 A lawyer Should Preserve the Confidence and Secrets of a Client Ethical Considerations
 EC 4-1 Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him.
 EC 4-4 The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. The ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge. A lawyer should endeavor to act in a manner which preserves the evidentiary privilege . . ..
 EC 4-5 A lawyer should not use information acquired in the course of the representation of a client to the disavantage of the client and a lawyer should not use, except with the consent of his client after full disclosure, such information for his own purposes . . ..
 EC 4-6 The obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment . . ..
 Disciplinary Rules
 DR 4-101 Preservation of Confidences and Secrets of a Client.
 (A) 'Confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.
 (B) Except when permitted under DR 4-101(C), a lawyer shall not knowingly:
 (1) Reveal a confidence or secret of his client.
 (2) Use a confidence or secret of his client to the disadvantage of the client.
 (3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.
 (C) A lawyer may reveal:
 (4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.
 Canon 9
 A Lawyer Should Avoid Even the Appearance of Professional Impropriety Ethical Considerations
 EC 9-1 Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confidence in our system and in the legal profession.
 EC 9-6 Every lawyer owes a solemn duty to uphold the integrity and honor of his profession: to encourage respect for the law and for the courts and the judges thereof; to observe the Code of Professional Responsibility; to act as a member of a learned profession, one dedicated to public service; to cooperate with his brother lawyers in supporting the organized bar through the devoting of his time, efforts, and financial support as his professional standing and ability reasonably permit; to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of his clients and of the public; and to strive to avoid not only professional impropriety but also the appearance of impropriety.