**HEARTBREAK CABARET CORP. (A New York Corporation) and Thelma Berg, Plaintiffs,**

v.

**CRUZ & TOLEDO RESTAURANT CORP. (A New York Corporation), Gustavo Toledo, Manuel Cruz, Arnold Rennert, NJM Management Co., Inc., the Ritz, John Scher, Neal Cohen, Donald K. Zuckerman and Mindy Birnbaum, Defendants.**

**CRUZ & TOLEDO RESTAURANT CORP., Counterclaim–Plaintiff,**

v.

**Thelma BERG, Leonard Berg, Lori Berg, Jeffrey Hill, Richard Margulies, Heartbreak Cabaret Corp. and TGB Holding, Counterclaim–Defendants.**

**CRUZ AND TOLEDO RESTAURANT CORP., Plaintiff,**

v.

**Gene DENINO, Vito Bruno, LPB Graphics Inc., Stanley Berke, Leonard Berg, Richard Margulies, Jeffrey Hill and Alan Fisher, Defendants.**

Nos. 87 Civ. 9064 (CSH), 88 Civ. 2604 (CSH).

United States District Court, S.D. New York.

Nov. 15, 1988.

Friedman & Kaplan, New York City (Eric Seiler, Lisa Gersh, Daniel Zenkel, of counsel), for Cruz & Toledo Restaurant Corp. and certain individual defendants.

Bernstein, Litowitz, Berger & Grossmann, New York City, Fleit, Jacobson, Cohn & Price, Washington, D.C. (Marsha G. Gentner, Harvey B. Jacobson, of counsel), for Leonard Berg.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Leonard Berg, a defendant and counterclaim defendant in the two above-captioned cases, and the president of Heartbreak Cabaret Corp. ("HCC"), moves to disqualify the law firm of Friedman & Kaplan (the Friedman firm) from representing any parties, corporate or individual, to this litigation.

Berg also prays for an order enjoining the Friedman firm, and in addition Donald Zuckerman and Mindy Birnbaum, defendants in the first action, from communicating to substitute counsel for C & T, as well as its officers, directors, shareholders or other agents, the subject of any attorney-client discussions or privileged matter arising from Zuckerman's and Birnbaum's prior representation of Berg or HCC, including documents obtained or generated by Zuckerman and Birnbaum in the course of such legal representation.[1]

Comprehension of the issues involved in the present motion for disqualification and related injunctive relief requires some explication of this tangled litigation, originally assigned to the late Judge Daronco, and thereafter reassigned to me.

The issues revolve primarily around the status and activities of Zuckerman and Birnbaum. They are attorneys. Birnbaum had been Zuckerman's student law clerk from February 1982 until March 1984, at which time she joined the bar and became Zuckerman's associate. Zuckerman suspended his practice of law in July 1985 for the restaurant business, in which Birnbaum joined him. In July 1987 Zuckerman resumed his law practice, this time in partnership with Birnbaum.

In the spring of 1982 Zuckerman became involved as an attorney with negotiations concerning a proposed nightclub to be called "Heartbreak" and operated at premises located at 179 Varick Street in Manhattan. When Zuckerman's pertinent professional activities commenced, defendant and counterclaim plaintiff Cruz & Toledo Restaurant Corp. ("C & T") was the owner of the lease and liquor licenses at 179 Varick

---

1. Berg's motion to disqualify the Friedman firm was initially filed only in the second action, and prayed only for the firm's disqualification as attorneys for Cruz & Toledo Restaurant Corp., the plaintiff in that action. However, the most recent correspondence of counsel delineate the broader boundaries of the requested disqualification. *See, e.g.,* letter of Harvey B. Jacobson, Esq., counsel for movants, dated August 26, 1988.

Street. The shareholders of C & T were Manuel Cruz and Gustavo Toledo.

Initially Zuckerman represented Robert Lobi Tarthelio and Frank Dinges in negotiations with Leonard Berg, his wife Thelma Berg, and others concerning respective ownership interests in the proposed nightclub. In mid 1982, according to Zuckerman, he began a joint representation of interests consisting of the Bergs, Lobi and Dinges, as well as C & T. Berg disputes Zuckerman's present claim of joint representation. He says that at the pertinent times Zuckerman was representing only HCC and him.

The Heartbreak nightclub opened for operations at 179 Varick Street later in 1982. Between 1982 and 1987, C & T employed Leonard Berg to manage the nightclub. The Bergs formed HCC, Thelma Berg being the sole shareholder and Leonard Berg the president of the corporation.

C & T terminated the services of HCC and the Bergs as manager of the nightclub on December 12, 1987. That action precipitated the litigation in this court.

On December 21, 1987, HCC and Thelma Berg commenced the first-captioned action against C & T, Toledo and Cruz. 87 Civ. 9064 (*Heartbreak I*). In *Heartbreak I* HCC and Thelma Berg charged C & T, Cruz and Toledo with breach of contract, and with trademark infringement, the latter claim arising out of those defendants' use of the trade and service mark "HEARTBREAK," which the plaintiffs alleged to be theirs. The defendants in *Heartbreak I* retained the law firm of Amster, Rothstein & Evenstein (the Amster firm) to represent them.

When HCC and the Bergs were advised on December 12, 1987 that their management contract of the nightclub had been terminated, they retained the New York law firm of Bernstein, Litowitz, Berger & Grossman as their general counsel, and the Washington, D.C. firm of Fleit, Jacobson, Cohn & Price as special trademark counsel.

In February 1988, C & T filed for protection under Chapter 11 of the Bankruptcy Code. The bankruptcy case is proceeding before Honorable Prudence B. Abram,

Bankruptcy Judge. *In the Matter of Cruz and Toledo Restaurant Corp.*, 88 B 10240. Another attorney, Robert Rattet, appears as attorney for the debtor in possession before the bankruptcy court.

Also in February 1988, HCC and the Bergs moved by order to show cause in this court before Judge Daronco to enjoin C & T from continuing to use the HEARTBREAK name. That motion was based on C & T's alleged violation of a consent order entered by Judge Daronco on December 30, 1987, in lieu of a preliminary injunction hearing. Judge Daronco conducted an evidentiary hearing on February 18, 1988, and granted the requested preliminary injunctive relief.

At that point, C & T retained the Friedman firm. The Friedman firm also applied to the bankruptcy court for retention as special counsel to the bankrupt estate, an application which Judge Abram approved *nunc pro tunc*.

Also in February 1988, the plaintiffs in *Heartbreak I* moved for leave to amend their complaint so as to add seven new party defendants, including Zuckerman and Birnbaum, with regard to the infringement claims. The proposed amended complaint also added a breach of fiduciary duty claim asserted solely against Zuckerman, as well as new claims for civil RICO violations, asserted against all defendants, new and old, including Zuckerman and Birnbaum. Judge Daronco granted plaintiffs leave to serve the amended complaint. Zuckerman, Birnbaum and the other new defendants thereupon retained the Friedman firm to represent their interests, with the sole exception of one Arnold Rennert, who retained his own counsel.

Count X of the amended complaint in *Heartbreak I* contains the claims of HCC and the Bergs against Zuckerman. It is captioned "Breach of Confidential Relationship and Conflict of Interest by Defendant Zuckerman." The claim alleges that "about 1982 through at least December 13, 1987," Zuckerman as an attorney represented Thelma Berg and HCC in connection with a variety of corporate, service mark

and trademark matters. ¶ 73. The claim also alleges that during his representation of these plaintiffs, Zuckerman simultaneously represented parties with interests conflicting with those of the plaintiffs, including representation of Rennert, Cruz and Toledo regarding the licensing of the HEARTBREAK mark, and those individuals' allegedly fraudulent claim of ownership of the rights to that trade name and trademark. HCC and the Bergs claim further that, acting covertly and indirectly, Zuckerman acquired and maintained a financial interest in the nightclub at 179 Varick Street and in the HEARTBREAK name and mark, thereby making or directing the infringing use of the same in violation of the plaintiffs' rights, all of these actions occurring while Zuckerman still represented the plaintiffs or while his attorney-client relationship with them was still in effect. ¶ 74. In consequence of these allegations, HCC and the Bergs charge Zuckerman with the maintenance of an unlawful conflict of interest, and breach of the confidential attorney-client relationship between Zuckerman and the plaintiffs, all to plaintiffs' damage, in an amount not yet ascertainable. ¶¶ 75, 76.

C & T commenced the second above-captioned action, 88 Civ. 2604, on April 13, 1988 (*Heartbreak II*). C & T asserts claims against a number of individuals, including Leonard Berg. C & T in that action invokes the Lanham Act, as well as pendent New York statutory and common law claims, in an effort to enjoin the continued use by Berg, his employees and business associates of the HEARTBREAK name and service mark, particularly in connection with nightclub services rendered by HCC at a new address, 555 West 18th Street, Manhattan, at a club known as "10-18." The Friedman firm is counsel of record for C & T in *Heartbreak II.*

Hearings took place before Judge Daronco in that litigation in April 1988, but tragically the Judge was murdered before he could decide the issues presented.

The HCC and Berg interests have moved to disqualify the Friedman firm in both the bankruptcy court and this court. In bankruptcy court, Judge Abram was asked to disqualify the Friedman firm as special counsel to C & T, the Chapter 11 debtor in possession. At a hearing conducted on August 11, 1988, Judge Abram expressed concern about the Friedman firm's representation of C & T within the context of the bankruptcy proceeding. That concern arose from the fact that the Friedman firm's fees for services rendered to C & T as debtor were guaranteed by Zuckerman and one Neal Cohen, Zuckerman's business partner. Judge Abram was also made aware of the fact that Zuckerman, Cohen, Birnbaum, and others, had formed a company called MJN Management Co., to take over the operations of the Heartbreak nightclub at the 179 Varick Street address.

Judge Abram was thus presented with a situation in which Zuckerman, more closely involved with the debtor's business operations than the judge first appreciated, had guaranteed payment of the Friedman firm's services to C & T, notwithstanding the potential of claims by C & T against Zuckerman for indemnity if HCC and the Bergs succeeded in their claims (pressed in the bankruptcy court as well as in this court) against C & T. Not surprisingly, this caused Judge Abram some concern. But she was not required to decide the disqualification motion, because following the August 11 hearing the Friedman firm voluntarily withdrew as special counsel to C & T in the bankruptcy court. C & T proposes to replace the Friedman firm with the Amster firm as special counsel. Whether or not that appointment is appropriate I cheerfully leave to Judge Abram, intimating no view of my own.

The most recent correspondence indicates the Friedman's intention to withdraw as counsel for C & T in the litigation in this court as well, in both *Heartbreak I* and *Heartbreak II*. That substitution has not yet been formally accomplished, but I assume that it will be. However, the disqualification motion addressed to the Friedman firm, and the additional injunctive relief sought against Zuckerman and Birnbaum, will not be mooted by such withdrawal, given the insistence of HCC and Berg that the Friedman firm be disqualified from rep-

resenting Zuckerman, Birnbaum and other individual defendants in this court, as well as the additional injunctive relief sought against Zuckerman and Birnbaum.

The basis for Berg's motion is the prior representation by Zuckerman and Birnbaum of the HCC and Berg interests, coupled with the alleged business activities of Zuckerman and Birnbaum which Berg alleges constitutes a conflict of interest.

■ The papers opposing the instant disqualification motion deal at length with the admissibility of Zuckerman's testimony over Berg's client-attorney objection, at the April 1988 hearing before Judge Daronco on C & T's motion for a preliminary injunction in *Heartbreak II*. But this issue, assuming without deciding the testimony's admissibility, is not dispositive of the motion to disqualify Zuckerman's counsel and for related injunctive orders against Zuckerman and Birnbaum. The ethical duty to preserve a client's confidences is broader than the evidentiary privilege. *Brennan's v. Brennan's Restaurants*, 590 F.2d 168, 172 (5th Cir.1979).

In aid of the testimony's admissibility, it is suggested that at the pertinent times Zuckerman was jointly representing the HCC/Berg interests and their present litigation adversaries. But the contemporaneous documents make it clear that at the time of HCC's application for federal registration of the HEARTBREAK name—an event central to the litigation—Zuckerman and Birnbaum were acting solely for HCC and Berg, without the knowledge, let alone the authority, of C & T. It is difficult otherwise to explain C & T's pleadings in *Heartbreak I*, opposing HCC's preliminary injunction motion, that C & T was "shocked" to learn for the first time in 1987 that Berg had obtained a federal service mark registration for HEARTBREAK. C & T Memorandum in Opposition at 11. Zuckerman's present claim of joint representation in respect of the key aspects of the case is without substance.

But the disqualification motion fails because of the nature of the claims HCC and Berg now assert against Zuckerman and Birnbaum.

In their amended complaint in *HEARTBREAK II*, HCC and Thelma Berg have chosen to assert serious claims against Zuckerman and Birnbaum. A RICO claim is asserted against both. In addition, a claim for breach of fiduciary duty is made against Zuckerman. All these claims arise out of events beginning in 1982 and extending throughout the succeeding years.

In the present motion, Berg relies upon Canons 4, 5 and 9 of the Code of Professional Responsibility, which provide respectively that a lawyer "should preserve the confidences and the secrets of a client"; "exercise independent judgment on behalf of a client"; and "avoid even the appearance of impropriety." With these general propositions, clearly no right-minded person would quarrel. However, Disciplinary Rule 4–101(C)(4) specifically provides that a lawyer "may reveal ... Confidences or secrets necessary ... to defend himself or his employees or associates against an accusation of wrongful conduct." In the case at bar, Zuckerman and Birnbaum, confronted with serious charges, wish to retain the Friedman firm to defend against those charges; and, in order that counsel may be properly instructed, Zuckerman and Birnbaum obviously require the ability to talk to their attorneys about their perception of the facts.

■ It matters not that in doing so, Zuckerman and Birnbaum may reveal communications with former clients which, in any other context, would be confidential. As a matter of common sense, when a former client sues his former attorney, the client places the attorney in a position where previously confidential communications must be revealed to trial counsel defending the attorney in the suit. It is this common sense proposition that finds expression in DR4–101(C)(4). *See Meyerhofer v. Empire Fire Marine Insurance Co.*, 497 F.2d 1190, 1194–95 (2d Cir.1974) (despite the breadth of the confidentiality canons, DR4–101(C) "recognizes that a lawyer may reveal confidences or secrets necessary to defend himself against an accusation of wrongful conduct."); *Housler v. First National Bank of East Islip*, 484

F.Supp. 1321, 1323 (E.D.N.Y.1980) (while former general counsel of defendant bank in shareholders' derivative action was enjoined from associating with plaintiffs or their counsel, the district court was careful to observe that: "If any disclosure of such confidences is to be made, it may only be in the narrow context of [the former attorney's] own defense.").

While Berg argues that Zuckerman betrayed his trust and breached attorney-client confidences prior to the filing of a claim against him in the amended complaint, that element of timing is irrelevant. As noted, the claim against Zuckerman embraces events from 1982 to and including 1987. When the claim against Zuckerman was actually filed is not important; it is the claim's content, not its timing, which sets the boundaries of Zuckerman's necessary defense, for which he is certainly entitled to the informed assistance of counsel.

Berg seeks to disqualify the Friedman firm because it received from Zuckerman information which Berg and HCC characterize as covered by Zuckerman's prior confidential attorney-client relationship with them. Taking the movants' argument to its logical conclusion, Zuckerman and Birnbaum would be precluded from telling any attorney they might retain to defend against these claims what their factual contentions are. No case known to this court reaches so bizarre a result; and the common sense, pragmatic declaration found in DR4–101(C)(4) shows why there is no such case.

Both *Meyerhofer, supra,* at 1196 and *Housler, supra,* at 1322 draw a distinction between disclosure of a former client's confidences to adverse third parties in litigation (forbidden by the canons), and disclosure of such confidences to the attorney's own counsel to defend against claims asserted by the former client (permitted by the canons). With the actual or imminent departure of the Friedman firm as counsel for C & T, no basis exists for depriving Zuckerman and Birnbaum of counsel of their choice in defending against the claims of HCC and Berg. Accordingly the motion to disqualify the Friedman firm from this

litigation fails. So does the motion against Zuckerman and Birnbaum for injunctive relief, insofar as it seeks to prevent them from making full revelations to the Friedman firm in aid of their defense against these claims. But Zuckerman and Birnbaum will be enjoined from disclosing any secret or confidential information obtained by them during their representation of HCC and Berg to successor counsel for C & T, or to officers, shareholders, or agents of C & T, or any one in privity with that corporation. That injunctive order will not apply to material information sought to be disclosed on discovery or at trial, *Meyerhofer* at 1196, contexts in which the evidentiary rules of privilege govern, and as to which no present opinion is expressed.

Counsel for either side may settle and order and judgment consistent with this opinion on five (5) days' notice.