Simeon MORIN, et al., Plaintiffs,

v.

Barry H. TRUPIN, et al., Defendants.

Arnold L. PETERSEN, II, et al., Plaintiffs,

v.

Barry H. TRUPIN, et al., Defendants.

Nos. 88 Civ. 5743 (RWS), 89 Civ. 3102 (RWS).

United States District Court, S.D. New York.

Dec. 12, 1989.

Adler Hindy Turner & Glasser, New York City, for plaintiffs; Jeremy D. Morley, of counsel.

Manning, Raab, Dealy & Sturm, New York City, for plaintiffs; William Dealy, of counsel.

Summit Rovins & Feldesman, New York City, for defendants/movants; John L. Amabile, Leonard D. Steinman, Howard Weingrad, of counsel.

## OPINION

SWEET, District Judge.

Various defendants in the consolidated actions *Morin v. Trupin* and *Peterson v. Trupin* have moved to disqualify the law firm of Adler Hindy Turner & Glasser and its co-counsel, Manning, Raab, Dealy & Sturm, attorneys for all plaintiffs in these actions, from continuing to represent plaintiffs, and for ancillary relief. The motion is based upon disclosures that were made to plaintiffs' counsel by a defendant, Harvey Haber ("Haber"), who once served as in-house counsel to a number of the defendants. Those disclosures, alleged to breach the confidential attorney-client relationship, were made by Haber in order to obtain his dismissal as a defendant from the lawsuit. For the reasons stated below, the motion to disqualify is denied, and certain ancillary relief is granted.

### The Parties and the Complaint

The plaintiffs in the consolidated action are all investors in one or more series of Rothschild Realty Partnerships (the "Partnerships"). According to the Complaint, the Partnerships owned limited partnership interests in several organizations, which organizations in turn owned various commercial real estate properties (the "Properties"). The Complaint alleges that the plaintiffs have been defrauded in connection with their investment in the Partnerships. Principally, it alleges that the Properties were sold and resold among entities controlled by defendant Barry Trupin ("Trupin") at inflated prices, that the private placement memoranda for the Partnerships contained fraudulent information, that appraisals of the Properties were inflated, that financial forecasts for the Partnerships were fraudulent, that tax opinions were false, and that adverse information concerning the Properties was covered up.

In the summer of 1988, the *Morin* suit was instituted against more than thirty defendants including the general partner of the Partnerships, the promoters of the offering of Partnership interests and their affiliates, control persons, officers, sales people, successors in interest, known employees, lawyers (both in-house and outside counsel) who worked on the offering memoranda accountants, and appraisal companies. In or about November, 1988 the *Blaikie* action was instituted against the same defendants, on behalf of other investors in the Partnerships, or in additional similar Partnerships. The defendants in the now consolidated actions are accused, *inter alia,* of issuing private placement memoranda in a series of real estate tax shelters involving defendant Barry Trupin and others which contained material misstatements and omissions of fact.

### The Facts of the Disqualification Dispute

Among the defendants named in the original complaints in the *Morin* and *Blaikie* actions was Harvey Haber, the central figure in the present disqualification dispute. Haber was identified in the complaints as having acted as "in-house counsel to entities in the Rothschild Group in connection with the transactions" and as the person "responsible for supervising and directing the activities of outside counsel" who were involved in the transactions that were the subject of suit.

Haber had been hired by Trupin in 1981 to become general counsel to one of the Rothschild companies associated with Trupin. From 1981 to 1986 Haber functioned as both an attorney and executive for several companies which were part of the group of companies (the "Rothschild Group") plaintiffs allege were owned or controlled by Trupin. In 1986, Haber ceased working for any of the companies in the Rothschild Group.

Following the filing of the complaints which named Haber as a defendant, Haber's lawyer, Kenneth Schachter ("Schachter"), spoke by telephone with plaintiffs' counsel to seek an extension of the time to respond to the complaints. In the course of his conversations, Schachter proposed that Haber be dropped as a defendant as he contended Haber had engaged in no actions making him liable to plaintiffs. Counsel for plaintiff indicated that Haber might be dropped from the lawsuit if he were willing to meet with counsel to discuss the case. Negotiations ensued that

resulted in Haber and his lawyer meeting with plaintiffs' counsel on December 6, 1988.

At that meeting, Haber signed an agreement pursuant to which plaintiffs agreed contingently to dismiss their claims against Haber on the condition that Haber fully cooperate with Adler Hindy by providing the law firm information concerning the matters alleged in the complaints and by testifying, as needed, at depositions, hearings or trials in the action. Although the written agreement does not so indicate, plaintiffs' counsel and Haber have stated for the record that they had discussions as to the scope of the attorney-client privilege and its applications to their chosen course, and agreed that Haber would not be forced to reveal any information which he or his lawyer believed to be covered by the attorney-client privilege.

Following execution of the agreement that day, plaintiffs' counsel questioned Haber in Schachter's presence. Haber answered questions put to him, except in one or two instances, in which he indicated the subject was one he did not feel at liberty to discuss. The next day, December 7, plaintiffs' counsel prepared and served a notice of dismissal dropping without prejudice its claims against Haber.

John Amabile, counsel for moving defendants, spoke to Haber about the dismissal notice shortly thereafter and was told that the dismissal had been conditioned on Haber's commitment to meet with plaintiffs' counsel and answer questions about the lawsuit. Amabile warned Haber of his responsibilities under the Code of Professional Responsibility at that time and advised Haber by letter on December 15, 1988, that his former clients (some of whom Amabile was representing in the litigation) did not intend to waive the attorney/client privilege or work product immunity. In the letter, Amabile also advised Haber that the Code of Professional Responsibility protected his former clients against disclosure of not only confidential, but also secret information, i.e., any information which Haber had gained in his professional relationship with his clients.

On at least three occasions subsequent to December 6, 1988, plaintiffs' counsel met or spoke with Haber without the presence of his lawyer Schachter and without notice to the lawyers for Haber's former clients to ask Haber additional questions relating to the subject matter of the lawsuits. Information obtained from Haber in these meetings and the December 6 meeting was referred to in an affidavit of one of plaintiffs' lawyers, Jeremy D. Morley, filed with the court in early July, 1989, in opposition to a motion by defendants Continental Realty and Emanuel Organik for summary judgment. That affidavit makes several factual allegations which are attributed to Haber and which Morley states were disclosed by Haber at meetings on December 6, December 18 and other occasions.

Shortly after the filing of that affidavit, defendants' motion to disqualify was brought on by order to show cause. A hearing was held on July 31, 1989, at which testimony was heard from Haber and Schachter.

Haber testified as to his recollection of the information he communicated at these meetings. He stated that he did not believe that he had disclosed to plaintiffs' counsel any information protected by the attorney-client privilege and further indicated that at the meetings (including the December 6 meeting) there were five or six instances in total in which he refrained from answering questions because he had attorney-client privilege concerns. Haber's testimony also revealed that he had not refrained from discussing with plaintiffs' lawyers facts or information learned at his employment with the Rothschild Group of companies, unless he directly related those facts to a conversation or communication with his former clients.

Following the hearing, detailed notes of these meetings taken by plaintiffs' counsel were produced to the court for *in camera* inspection. The matter was taken on submission following filing of post-hearing briefs.

*Discussion*

This disqualification motion requires a determination, in the first instance, wheth-

er Haber has wrongly communicated to plaintiffs' counsel information that was protected by the attorney-client relationship he formerly had with certain of the defendants, and, if so, whether plaintiffs' counsel, by virtue of their receipt of such information, should be disqualified from continuing with their representation.

*The Confidentiality of the Attorney–Client Relationship*

The former question demands examination of Haber's duties to his former clients. The principles of confidentiality that govern the relationship between attorney and client are the subject of two distinct bodies of law:

the attorney-client privilege (which includes the work-product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law.

*First Fed. Sav. & Loan v. Oppenheim, Appel, Dixon,* 110 F.R.D. 557, 564 n. 12 (S.D.N.Y.1986) (quoting Comment to Rule 1.6 of the Model Rules of Professional Conduct).

The scope of the ethical rules is not equivalent to the that of the evidentiary privilege. The ethical rules of client-lawyer confidentiality forbid a lawyer from knowingly disclosing a "confidence" *or* "secret" of his client. Disciplinary Rule 4–101, American Bar Association Code of Professional Responsibility; *see also* N.Y. Jud.Law., Code of Professional Responsibility, DR 4–101(A) (same). Rule 4–101(A) defines a "confidence" to be any information that is protected by the attorney-client privilege under applicable law (thus includ-

ing all material falling within the protection of the evidentiary privilege); the broader category of "secret" embraces all other information "gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." *Id.*[1]

This Disciplinary Rule is mandatory, establishing the minimum level of conduct below which no lawyer can fall without risk of being subject to disciplinary action. Preliminary Statement, Code of Professional Responsibility. Haber was fully bound by this Rule of the Code, as his statements were voluntarily and informally made to plaintiffs, rather than compulsory ones made as an evidentiary witness subject to the supervision and protection of the court.

*Haber's Adherence to the Code*

■ Did Haber abide by the Code? Movants argue that the disclosure of the defendants' confidences and secrets by Haber to plaintiffs' counsel must be irrebuttably presumed under *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2d Cir.1973), because Haber concededly had access to relevant information of his former clients and concededly spoke to plaintiffs' counsel with respect to the subject matter of the litigation. That view is plainly mistaken in the present litigation context.

Evidence was appropriately taken on the disclosure question because the *Emle* presumption "has no application" where an attorney with access to client confidences by virtue of his former representation does not seek to "prosecute litigation" against his former clients, whether as a party or as counsel for the plaintiff party. *Meyerhofer v. Empire Fire and Marine Ins. Co.,* 497 F.2d 1190, 1195 (2d Cir.1974) (citations omitted), *cert. denied,* 419 U.S. 998, 95 S.Ct. 314, 42 L.Ed.2d 272 (1974). *Emle* applies in the quite distinct situation in

---

**1.** As explained further in Ethical Consideration 4–4:

The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his

client. The ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge.

EC 4–4, Code of Professional Responsibility.

which an attorney whose loyalties were once pledged to one client seeks to represent another client in an action in which the present and former clients' interests are adverse. Here, Haber, not plaintiffs' counsel, had a prior attorney-client relationship with certain defendants. While the record discloses that Haber conversed with plaintiffs' counsel and agreed to be called as a witness by the plaintiffs, "that role does not invest him with the intimacy with the prosecution of the litigation which must exist for the *Emle* presumption to attach" to plaintiffs' counsel. *Id.*

The record leaves no doubt, however, that in discussions with plaintiffs' lawyers, Haber was asked to reveal, and did reveal, secrets of his former clients. Haber's in-court testimony and the notes taken by plaintiffs' counsel show that Haber disclosed information that he had "gained" as a result of "the professional relationship" he had with his former clients. That such information was "likely to be detrimental" to his former clients is self evident, since his former clients were the subject of lawsuits the successful prosecution of which was a purpose of plaintiffs' lawyers examination of Haber, and the questioning of Haber concerned the conduct and events that plaintiffs have alleged render defendants liable for substantial sums of money.

Haber's actions thus violated the ethical rules of confidentiality unless the disclosure fell within one of the identified exceptions permitting revelation of a client's confidences and secrets. Here it is urged that the "self-defense" exception, DR 4-101(C)(4), applied to Haber's conduct. Pursuant to DR 4-101(C)(4), a lawyer may

reveal confidences or secrets when "necessary to ... defend himself or his employees or associates against any accusatory or wrongful conduct." *Id.*

Haber, having been named as a defendant in civil actions alleging he and others committed securities fraud, faced accusations of wrongful conduct. In view of this circumstance, he "had the right to make an appropriate disclosure with respect to his role" in the wrongdoing of which he was accused. *Meyerhofer*, 497 F.2d at 1195. The record, however, contains no support for the notion that Haber abided by (or was even aware at the time of) this limited exception, which permits disclosures to be made "only ... in the narrow context of [the attorney's] own defense." *Housler v. First Nat'l Bank of East Islip*, 484 F.Supp. 1321, 1323 (E.D.N.Y.1980).

To the contrary, the written agreement Haber entered into with plaintiffs' counsel obligated him to cooperate fully with plaintiffs' lawyers' investigation into the matters at issue in the two actions, not just provide such information as was necessary to establish his innocence. Moreover, the questioning at times elucidated information that, although perhaps helpful to plaintiffs' investigation, did not directly bear on the propriety or legality of Haber's activities. Thus, Haber's disclosures, made at the prompting of plaintiffs' lawyers, cannot be said to have conformed with the requirements of DR 4-101, even if, as Haber and plaintiffs' counsel contend, no breach of the evidentiary attorney-client privilege occurred.[2]

*The Disqualification Remedy*

That there occurred a breach of the Code of Professional Responsibility does not it-

---

**2.** Plaintiffs urge that *First Federal Savings and Loan v. Oppenheim, Appel, Dixon & Co.*, 110 F.R.D. 557 (S.D.N.Y.1986), provides a safe harbor for any unsupervised, unilateral disclosures by an attorney such as Haber that "seem likely to provide significant assistance" to his or her defense. However, any such disclosure is improper unless it concerns the lawyer's own role in the alleged misconduct. *United States v. Sindona*, 636 F.2d 792, 804 (2d Cir.1980) (permissible disclosure limited to matters which clear attorney's name). *First Federal* may take a broad view of the sort of disclosure that is "necessary" to establish *innocence* of wrongdo-

ing, but nowhere does it hint that an attorney ethically might aid his own defense by cutting a deal to disclose, or verify the truth of, information that, wholly apart from its bearing on his own involvement, assisted plaintiffs' counsel in their efforts to prosecute an action against the other defendants. In addition, *First Federal* addresses the proper scope of *court-monitored* disclosures, authorized *after* all sides have had an opportunity to address the confidentiality issues as they apply to the specific information sought to be disclosed. For these reasons, the decision does not support the propriety of the disclosures made in the present case.

self dispose of this motion. Although application of the Code "is a part of the court's general supervisory authority," *Cresswell v. Sullivan & Cromwell*, 704 F.Supp. 392, 400 (S.D.N.Y.1989), the motion presently before the court is one to disqualify plaintiffs' counsel, not discipline Haber. "Disqualification is granted to protect the integrity of the proceedings, not to monitor the ethics of attorneys' conduct." *U.S. Football League v. National Football League*, 605 F.Supp. 1448, 1463 n. 31 (S.D. N.Y.1985); *see also Armstrong v. McAlpin*, 625 F.2d 433, 446 n. 26 (2d Cir.1980) (*en banc*) (noting that "Code's Disciplinary Rules were drafted for use in disciplinary proceedings and were not intended [by the drafters] to be used as rules governing disqualification motions," although such Rules provide guidance in deciding whether attorney's participation will taint the proceedings).

■ *In camera* examination of the disclosures made by Haber, as evidenced by the notes, indicates that disqualification of plaintiffs' counsel is not necessary to preserve the integrity of the proceedings. Disqualification is an extreme remedy that "courts should be quite hesitant" to order unless conduct by counsel will likely "taint the underlying trial." *Board of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979). Such taint is more readily found in situations where counsel seek to represent a party that is litigating against former clients of the counsel. Here, the conduct of Haber and plaintiffs' attorneys, while failing to adhere to the important ethical and disciplinary

provisions of the Code of Professional Responsibility, is not so egregious as to warrant disqualification predicated on counsel's bad faith, and has not resulted in disclosures of confidences that are likely to prevent a fair trial.[3]

*Suppression of Communications*

If disqualification is inappropriate to the situation, Canon 4 nevertheless requires "a strict prophylactic rule" be applied to ensure that Haber, as former counsel to numerous defendants, not serve as a unilateral "means by which plaintiffs would be permitted to prove the allegations of the complaint." *Housler*, 484 F.Supp. at 1322.

The general ethical norm that information acquired in the course of representation of a client not be disclosed to the client's disadvantage nor revealed without the client's consent, *see* Code of Professional Responsibility EC 4–5, should serve as a warning to lawyers that an exception founded upon self-defense ought to be invoked gingerly, after careful study and deliberation. Haber's conduct, to the extent thought to have its warrant in self-defense, certainly did not require such urgency of action as to justify breach of the confidential relationship without providing prior notice to his clients or the court of the intended disclosures. Such notice would have permitted Haber's former clients to apply for an appropriate protective order and would have assured that disclosures would be made, if at all, only to the extent required or permitted by evidentiary rules and/or the Code.[4] Haber and plaintiffs'

---

**3.** *Cf. Meyerhofer*, 497 F.2d at 1193, 1195 (reversing trial court's disqualification of plaintiff's counsel who were recipients of affidavit authored by former attorney of one defendant, notwithstanding that affidavit, while tending to show attorney's innocent role in preparing offering plan that was subject of suit, in addition addressed in detail intended non-disclosure in a separate transaction that reflected seriously upon other defendants); *Housler v. First Nat'l Bank of East Islip*, 484 F.Supp. 1321, 1322–33 (E.D.N.Y.1980) (considering and ordering use of protective order, but not disqualification remedy, to prevent plaintiffs' further reliance on information acquired from defendant's former general counsel).

**4.** The point has been aptly made in *First Federal*, 110 F.R.D. at 566–67:

The Second Circuit in *Meyerhofer* expressed some concern that the attorney in that case had revealed considerably more information than simply the facts relevant to whether he had been involved in the asserted fraud. Although the Court there excused Goldberg's generosity with his client's secrets by noting that the attorney was apparently "in a situation of some urgency ..." and had consulted counsel prior to the disclosure, 497 F.2d at 1195, the Court did direct that any subsequent disclosures be supervised by the district court. *Id.* at 1196.

In this case, of course, the "urgency" of the situation is attenuated by the fact that the

counsel prevented that process, by carrying out their discussions in private, without notice.

As noted, very little "toothpaste got out of the tube" despite this lack of notice. To prevent further recurrences, however, Haber shall hereafter be enjoined from disclosing any information bearing on the events subject to this litigation to plaintiffs or to plaintiffs' counsel, except insofar as such disclosure is made, following adequate notice, at formal discovery proceedings or at trial.

In addition, to minimize any effect of Haber's prior communications, plaintiffs' attorneys shall be directed to destroy all notes and other material of whatever kind which reflect or refer to conversations or communications between counsel and Haber, and each of plaintiffs' counsel shall also refrain from communicating with anyone the substance of his or her knowledge of the conversations with Haber. It will also be appropriate to order that those portions of the June 30, 1989 affidavit of Jeremy D. Morley, Esq. that relate to Morley's communications with Haber be sealed and stricken from the record, and that all papers filed in connection with this disqualification motion be kept under seal.

*Conclusion*

For the reasons set forth above, the defendants' motion to disqualify plaintiffs' counsel and for appropriate ancillary relief is denied in part and granted in part.

Settle order on notice.

It is so ordered.

proposed disclosure is to be made in the context of ongoing pre-trial discovery. Accordingly, the Court can limit the scope of the

disclosure in order to reconcile, to the extent possible, the competing interests....